## REYMAN v. STATE OF INDIANA.

[No. 24,743. Filed February 5, 1926. Rehearing denied May 19, 1926.]

1. CONSPIRACY.—*Indictment for conspiracy to commit a felony must describe it with same particularity as though the commission of such offense were charged.*—An indictment for conspiracy to commit a felony must describe the intended felony with the same particularity that would be required in an indictment for the commission of such felony alone. p. 688.

2. ARSON.—*Ownership of property not element of offense when the property burned is insured and the burning is with intent to defraud the insurer.*—The ownership of the property is not an element of the offense when the property burned is insured

against loss or damage by fire and the burning or attempt to
burn is with intent to defraud the insurer.  p. 688.

3. ARSON.—*Failure of indictment to correctly name owner of the
property burned does not render it insufficient on a charge of
attempting to defraud an insurer.*—In an indictment for burn-
ing or attempting to burn insured property, with intent to
defraud the insurer, the failure to correctly name the owner
would not render the indictment insufficient on a motion to
quash, as the ownership of the property is not an essential
element of the offense.  p. 688.

4. INDICTMENT.—*Indictment in prosecution for burning insured
property for purpose of defrauding insurer held not insuffi-
cient for alleging that ownership of property was in insured
but insurance was issued to accused and another.*—Since, under
the provisions of §2219 Burns 1926, §2061 Burns 1914, an
indictment for burning insured property for the purpose of
defrauding the insurer might allege the ownership of the prop-
erty to be in one who held subject to a mortgage or in one
of two joint owners, or in a tenant, an allegation that the
property burned belonged to the accused was not inconsistent
with a further allegation that the insurance policy was issued
to accused and another, and hence the indictment was not
thereby rendered insufficient.  p. 688.

5. CRIMINAL LAW.—*Accomplices, when they consent to testify,
are competent witnesses.*—Under §2267 Burns 1926, §2111
Burns 1914, accomplices, when they consent to testify, are
competent witnesses.  p. 690.

6. CONSPIRACY.—*Evidence of accomplices held sufficient to take
case to the jury in prosecution for conspiracy to commit arson.*
—Evidence of accomplices in crime of arson *held* sufficient to
take case to jury against defendant charged with conspiring
with others to commit the crime of arson.  p. 690.

7. CRIMINAL LAW.—*Affidavit stating that persons in jury room
were overheard to make certain statements not sufficiently def-
inite to charge misconduct of jurors.*—The statement in an
affidavit supporting a motion for a new trial on the ground
of misconduct of the jury that persons in the jury room were
overheard to make certain statements, without indicating in
any manner who made them, was not sufficiently definite to
present the question.  p. 690.

8. CRIMINAL LAW.—*Trial court's decision on issues of fact
raised by affidavits and counter-affidavits as to misconduct of
jurors is binding on Supreme Court.*—Where affidavits and
counter-affidavits were filed as to misconduct of jurors, the
decision of the trial court on the issue made by such affidavits
is binding on the Supreme Court and cannot be set aside on

the mere weight of the evidence contained in the conflicting affidavits. p. 690.

9. CRIMINAL LAW.—*Affidavits in support of motion for new trial properly rejected when offered after expiration of time for filing motion.*—Although a motion for a new trial alleging misconduct of some of the jurors had been filed within the time allowed by statute, affidavits supplementing those filed with the motion were properly rejected when offered after the expiration of the time for filing such motion. p. 696.

10. CRIMINAL LAW.—*Statements of jurors are not received to impeach their verdict, but their affidavits are competent to uphold their verdict.*—Statements of jurors, whether in the form of affidavits by them or of unsworn statements overheard by others who make affidavit to them, cannot be received to impeach their verdict, though the affidavits of jurors are competent to uphold their verdict. p. 696.

11. CRIMINAL LAW.—*Specifications of error in motion for new trial are not considered on appeal where transcript and appellant's brief do not present any question thereon.*—Specifications of error in motion for a new trial will not be considered on appeal where the transcript and appellant's brief were not so prepared as to present any questions arising under such specifications. p. 696.

From Orange Circuit Court; *James L. Tucker,* Judge.

John W. Reyman was convicted of conspiracy to burn a barn with intent to defraud the insurer thereof, and he appeals. *Affirmed.*

*Milton B. Hottel,* for appellant.

*Arthur L. Gilliom,* Attorney-General, *Edward J. Lennon, Jr., George Muller,* Deputy Attorneys-General and *U. S. Lesh,* for the State.

EWBANK, C. J.—Appellant, as the defendant below, was charged by indictment with having conspired with two other persons to burn a barn that belonged to him and was insured in favor of himself and another, with intent thereby to defraud the insurance company. His motion to quash the indictment for the alleged reason that it did not state facts constituting a public offense, nor charge the offense with sufficient certainty, having been overruled and an exception reserved, he entered

a plea of not guilty, and, severing in his defense, was tried separately by a jury which returned a verdict finding him guilty as charged. Overruling the motion to quash the indictment and overruling the motion for a new trial are properly assigned as errors.

The indictment charged that John W. Reyman (appellant), John Ott and Ollie Roseberry, on May 12, 1920, at, etc., did "unlawfully, knowingly and feloniously unite, combine, conspire, confederate and agree to and with each other for the object and purpose and with the unlawful and felonious attempt then and there wilfully and feloniously to set fire to and burn a certain frame building (describing it) * * * of the value of $3,000, and being then and there the property of John W. Reyman, and upon which a policy of insurance for $1,500 had been issued by the Home Insurance Company of New York in favor of said John W. Reyman and one Anna Reyman, which said policy of insurance was then and there in force against loss or damage by fire, with intent then and there and thereby to defraud the said insurance company in the sum of $1,500."

An indictment for conspiracy to commit a felony must describe the intended felony with the same particularity that would be required in an indictment for the commission of such felony alone. *Allen* v. *State* (1915), 183 Ind. 37, 45, 147 N. E. 471. But the statute which defines the crime of arson provides that, "whoever wilfully and maliciously burns or attempts to burn any dwelling house or other buildings * * * vehicle * * * or any other agricultural or farming implement; * * * the property so burned or attempted to be burned being of the value of twenty dollars or upwards, and being the property of another, or being insured against loss or damage by fire, and the burning or attempt to burn being with intent to preju-

dice or defraud the insurer, is guilty of arson, and, on conviction, shall be imprisoned," etc. §2441 Burns 1926, §1, ch. 37, Acts 1919 p. 87. This section of the statute does not make the ownership of the property an element of the offense thereby defined when the property burned is insured against loss or damage by fire, and the burning or attempt to burn is with intent to defraud the insurer. And a failure of the indictment to name the owner correctly would not necessarily make it insufficient on motion to quash, where the offense is charged in the language of the statute. *State* v. *Korth* (1917), 39 S. D. 365, 162 N. W. 144; *State* v. *Bersch* (1918), 276 Mo. 397, 207 S. W. 809; *People* v. *Barbera* (1916), 29 Cal. App. 604, 157 Pac. 542. And an indictment which did not name the person in whose favor the policy of fire insurance was issued was held sufficient on motion to quash. *Hart* v. *State* (1914), 181 Ind. 23, 103 N. E. 846. But, in any event, so far as appears from the averments of this indictment, the defendant, John W. Reyman, may have been the owner of the barn and Anna Reyman may have had an interest in it as holder of a mortgage thereon, or John W. Reyman and Anna Reyman may have been partners or joint owners of the barn, or one of them may have held title to the barn and the other may have occupied it as a tenant. And in charging an offense committed upon or in relation to property in which two or more persons have an insurable interest, whether as owner and mortgagee, or as partners, or as joint owners, or by reason of one of them being in possession as bailee or tenant of the other who holds title to the property, it is sufficient, as matter of pleading, for an indictment or affidavit to allege the ownership of such property to be in the owner who holds subject to a mortgage, or in any one of the partners or joint owners, or in the tenant

or bailee.    §2219 Burns 1926, §2061 Burns 1914, §190, ch. 169, Acts 1905 p. 584.

An insurance policy might lawfully be issued payable to a mortgagor and mortgagee as their interests might appear, or payable to two persons who were partners, or who were joint owners of the property insured, or one of whom held the ultimate title and the other was in possession under a lease.   And the allegation that the barn which the defendants conspired to set on fire and burn was the property of John W. Reyman is not inconsistent with the further allegation that a policy of insurance thereon had been issued in favor of him and Anna Reyman which was then in force.   No error was committed in overruling the motion to quash the indictment.

A specification in the motion for a new trial that the court erred in overruling defendant's motion to direct a verdict in favor of the defendant challenged the sufficiency of the evidence to prove that appellant was guilty.   There was evidence as follows:   That the defendant, John W. Reyman, was and for many years had been keeping a livery stable at Salem, Indiana, and engaged in farming and buying and selling horses and other live-stock; that seven policies of insurance, including the one described in the indictment, in favor of him and Anna D. Reyman, were in force covering the livery barn, or its contents, or both, in the aggregate amount of $8,800, and another policy payable to appellant, himself, insuring an automobile that was in the livery barn in the sum of $1,350; that the building was not worth more than $1,600, and the automobile not more than $300, and almost all of the other contents of the building had been removed except a load of hay and a number of old buggies and carriages not worth more than ten dollars to forty dollars apiece; that a wheel had been removed from the auto-

5-8.

mobile and it was fastened in the barn with a chain and padlock; that defendant Reyman told defendant Roseberry to burn the livery barn and an old house near there and an old barn belonging to Peter Cauble, and promised to pay him fifty dollars for burning the livery barn; that Roseberry got a can and went with defendant Reyman to his farm and tried to get some gasoline out of a car there but could not, and Reyman gave Roseberry a dollar with which he bought a piece of hose, giving back the change to Reyman, and then they went together and with the hose syphoned some gasoline out of the car into the can, Reyman watching while Roseberry took out the gasoline; that Roseberry engaged defendant Ott to help him burn the barn for half of the fifty dollars that Reyman had promised to pay; that Reyman and Ott went up into the livery barn and got some of the gasoline which they put in a jug and went down to Cauble's barn, where Roseberry poured some gasoline on the stairway and lighted a match and set fire to the barn; that this fire burned Cauble's barn, some automobiles, a horse, another barn, a garage, and three or four frame houses, but did not reach Reyman's livery barn, and Roseberry and Ott were afraid, after the crowd collected, to go back to the livery barn and set it on fire; that Roseberry reported the facts to Reyman, the next day, when Reyman said "You can touch mine off tonight"; that Reyman left town that night on the train, but, before he left, he gave Roseberry a pint of white mule, and Roseberry had several drinks before he went up in Reyman's barn and went to sleep on the hay; that Roseberry and Ott had torn an old horseblanket into strips and made a "streamer," which they twisted and tied to the can of gasoline, on the night the Cauble barn was burned, and about seven o'clock the next night, Roseberry told Ott he was going to burn the Reyman barn, but Ott said he could not get

away from home; that, before going to sleep, Rose-
berry had gone out in the old house and got the can of
gasoline and hid it up in the barn; that about 1
o'clock the next morning, Roseberry wakened and car-
ried the can of gasoline to the center of the barn, up in
the loft, and poured out part of the gasoline, and tried
to saturate the string attached to it, and then set the
can down and stretched the string over to a manger, and
lighted it with a match; that it started to blaze and he
jumped down and went home; that an alarm was turned
in, and some boys broke into the barn and climbed up
in the loft and put out the fire; that before this was
done, Reyman had carried some harness and laprobes
and other property away from the barn, and by his
permission Roseberry and Ott had taken some old har-
ness and laprobes and collars and things that they
thought they could use which he had not taken away;
that Reyman had previously promised Roseberry fifty
dollars for burning another building that was insured
for $10,000, and Roseberry had promised Ott half of
the money for helping to burn it, and after the building
was burned, Reyman had sued to collect the insurance
on that building, but had only paid Roseberry twenty-
five dollars for the job, of which he gave Ott twelve
dollars and fifty cents; that Reyman had also previously
employed Roseberry to burn an old house near the livery
barn, and when Roseberry said that it would be likely
to burn the barn, Reyman said he did not have as much
insurance as he would like to have on the barn, "but if
she burns let her go to hell." And that after the fire
in the livery barn, when an investigation was being
made by the officers, Reyman repeatedly said to Rose-
berry and Ott to hold their heads and not tell anything,
and the officers could not find out anything as long as
they kept still, and there would be nothing to it. There
was also evidence that, at some time in the past, Rey-

man had employed Forrest Ray to burn an old building in which Reyman had some personal property stored, and had then said he wanted it destroyed for the insurance; and that that property was set on fire by Ray and burned, for which Reyman paid Ray twenty-five dollars; that afterward Reyman promised to give Ray fifty dollars if he would burn the house in which he lived, on Reyman's farm, and that Ray burned the house and was paid part of the agreed price by Reyman, who then found that the insurance was on his barn instead of the house; that Reyman went to a lawyer afterward and asked him to get hold of the application for insurance and change it so it would read that the application was for buildings on the east side of the road, which would include the house that was burned. There was also a great deal more evidence to the same general effect, the evidence which directly connected Reyman with any purpose to cause the destruction of his buildings by fire being given by Ollie Roseberry, John Ott, and Forrest Ray, all of whom had served terms of imprisonment for arson in burning the buildings which they said they were hired by Reyman to set on fire. But accomplices, when they consent to testify, are competent witnesses. §2267 Burns 1926, §2111 Burns 1914, §235, ch. 169, Acts 1905 p. 584. Appellant did not testify, and the testimony of Roseberry, Ott and Ray that the above facts are true is challenged only by evidence to the effect that the property burned was of much greater value than the witnesses for the state placed upon it, and by evidence tending to impeach the credibility of Roseberry, Ott and Ray, whose character was supported, in turn, by much evidence that it was good in that respect. The weight of the evidence was for the jury. And if the jury believed the facts to which these witnesses testified, their evidence was sufficient from which to draw an inference that appellant was

guilty of the offense charged.    The court did not err in refusing to direct a verdict in his favor.

At the time the verdict was returned, the jury was polled, and each member stated that the verdict returned was his verdict.    But thirty days afterward, when the motion for a new trial was filed, one of the reasons assigned for asking a new trial was the alleged misconduct of the jury while deliberating upon their verdict, in that (it was charged) they discussed certain outside matters prejudicial to the defendant Reyman, and permitted their action in returning a verdict of guilty to be influenced by what had been said concerning those matters, and by the fears thereby induced of what others might say if a verdict of not guilty was returned, and by the fear thus induced that unless the verdict of guilty was agreed upon, they could not be released from jury duty as soon as they desired, but might be required to attend another trial at Indianapolis.    In support of this motion, appellant filed his own affidavit and the affidavit of three other persons, stating what each affiant said he had heard certain unidentified jurors say to each other when listening outside the door of the room into which the jury had retired for deliberation, and the affidavit of another person stating what he said he had heard a designated juror say on the street after the jury had been discharged, purporting to be a relation of what certain unidentified jurors had "reported" in the jury room at the time the jury was engaged in deliberating upon their verdict.    Counter-affidavits of the one juror thus designated by name, and of seven of the other jurors, were filed by the state, in which each specifically denied all knowledge of any of the things having occurred which were alleged in the motion for a new trial and the affidavits in support of such motion, and asserted that in arriving at the verdict returned in this case, each affiant was governed solely and exclu-

sively by the testimony of the witnesses as he heard it from the witnesses on the witness-stand, and by the law as he understood it to be, and not by any outside matters. The mere statement that persons in the jury room were overheard to make certain statements, without indicating in any manner who made them, was not sufficiently definite as a charge of misconduct on the part of the jurors. *Williams* v. *State* (1923), 193 Ind. 670, 674, 139 N. E. 657.

And statements as to what was said by an unidentified person and overheard by a listener outside the jury room, who could not intentionally listen to what the jury were saying to each other while deliberating upon a verdict without being guilty of contempt of court, should be received with caution, if received at all. But granting, for the purposes of the argument, that the affidavits in support of the motion for a new trial were sufficient to present the question whether or not the jury was guilty of misconduct while deliberating, in having done and said what was charged in these affidavits, the counter-affidavits denying what was so charged presented an issue of fact, the decision of which by the trial court is binding on this court, and cannot be set aside on the mere weight of the evidence contained in the conflicting affidavits. The Supreme Court must accept as final the decision of the trial court that the facts alleged in one set of affidavits and denied by the other did not exist. Therefore, it is not necessary to consider and we do not decide whether or not misconduct of the jury in making improper statements to influence each other while in the privacy of retirement for deliberation could be established by the affidavits of a defendant and other persons stating what they might say they overheard through the walls or closed doors of the jury room while loitering outside, in case such statements were not contradicted.

Three weeks after the time allowed by law for filing a motion for a new trial had expired, the defendant Reyman offered to file the affidavits of three of the jurors in support of certain averments in his motion for a new trial, previously filed, purporting to relate certain statements which each of them said had been made by "certain members of the jury" (not named) with reference to matters outside of the evidence, and averring that each affiant had been influenced by such statements to vote for a verdict of guilty, one affiant stating that he had been voting for a verdict of "not guilty" before such statements were made. These affidavits were properly rejected, and leave to file them was properly denied, for the reasons, among others, that the time within which to present an application for a new trial had expired. §2325 Burns 1926, §2158 Burns 1914, §282, ch. 169, Acts 1905 p. 584. And that the statements of jurors, whether in the form of affidavits under oath or of unsworn statements overheard by others who make affidavit to them, cannot be received to impeach a verdict which they took part in returning, though the affidavits of jurors are competent and admissible to uphold their verdict. *Reed* v. *State* (1897), 147 Ind. 41, 49, 46 N. E. 135; *Meno* v. *State* (1925), *ante* 16, 148 N. E. 420, 423, 424; *Miller* v. *Berne Hardware Co.* (1917), 64 Ind. App. 473, 478, 116 N. E. 54.

The motion for a new trial also specified as errors the admission of certain evidence, the exclusion of certain other evidence, and the giving and refusal of certain instructions. But the transcript and the brief for appellant have not been so prepared as to present any questions arising under these specifications.

The judgment is affirmed.