MYERS *v*. STATE OF INDIANA.

[No. 29,862.  Filed June 28, 1960.]

*Herrod Carr*, of Greensburg, for appellant.

*Edwin K. Steers*, Attorney General, *Richard M. Givan*, Assistant Attorney General, *Richard C. Johnson*, Deputy Attorney General, and *Greeley Gay*, Prosecuting Attorney, 80th Judicial Circuit, for appellee.

PER CURIAM.—Appellant was charged by amended affidavit with the crime of second-degree burglary under Acts 1941, ch. 148, §4, p. 447, being §10-701, Burns' 1956 Replacement, tried by jury, found guilty as charged, and sentenced accordingly.

The affidavit charged appellant with breaking and entering into the "filling station building of Floyd M. Rayner and Betty Lou Rayner" in Milan, Indiana, being a dwelling house or place of human habitation, and taking away goods, chattels and personal property of Robert O. Rayner and Floyd M. Rayner, d/b/a R. O. Rayner & Son, consisting of razor blades and other items not here in question.

Appellant asserts that the trial court erred in over-

ruling his motion for a new trial and urges the following alleged errors.

*First:* It is asserted that the trial court erred in permitting the introduction of four packages of razor blades into evidence over the objection of appellant, on the ground that they were not properly identified as being the property of the victim of the robbery.

Charles K. Spencer, the town marshal of Milan, Indiana, who apprehended and handcuffed appellant as he came out of the filling station, testified, as a witness for the State, that the county sheriff and he searched appellant as soon as the sheriff arrived at the scene of the crime and "took four packages of razor blades out of his (appellant's) pocket;" and that appellant admitted that he "got them" in the filling station, which was the subject of the alleged burglary herein, and that they were the property of Rayner. This witness further testified on cross-examination, that he "took the blades off" appellant and that they had been in his (the marshal's) possession until he gave them to the prosecuting attorney on the morning of the trial.

The above testimony was sufficient to identify the razor blades as property taken from the filling station and persons described in the affidavit.

*Second:* Appellant asserts that his right to a fair and impartial trial was violated by the alleged misconduct of the jury in (a) "that after the jury had been impanelled and during the noon hour intermission and before the defendant introduced any evidence, part of the jurors met in a tavern across from the court house in Versailles, Indiana, and while drinking intoxicating liquors, discussed the case among themselves and stated in words in [and] substance that the defendant was guilty and it would not take them long to convict him;" and (b) "that the court permitted the jurors at inter-

missions to sit in the corridor of the court house," and on one or more occasions, while there, some of the jurors conversed with three of the witnesses for the State.

All of the affidavits pertaining to the discussion by members of the jury at the tavern are based upon hearsay—what the affiant heard someone say—and none of the jurors are identified. These affidavits are insufficient to charge misconduct of a juror, not only because they are based upon what some third person overheard members of the jury say regarding their opinion as to the guilt of the defendant-appellant, but also because none of the jurors involved are in any way identified. *Reyman* v. *State* (1926), 197 Ind. 685, 695, 150 N. E. 409.

Counter-affidavits were submitted by State's witnesses mentioned in appellant's affidavit in which it is asserted that at no time did the affiants communicate with any member of the jury about the defendant-appellant or anything concerning the case in which they were called as witnesses.

While the practice of permitting members of the jury to mingle with witnesses or others in anyway connected with the trial, is to be condemned, it here appears that both the witnesses and the attorney for appellant were also permitted to mingle with members of the jury.

In *Spencer* v. *State* (1958), 237 Ind. 622, 147 N. E. 2d 581, it was charged that the court erred in permitting members of the police department, prosecuting staff, investigators, and the public generally to mingle with the jury and pass through the room where the members of the jury stayed during intermissions and recesses, and that it was possible under such circumstances for the jury to overhear statements and comments from such persons concerning the trial. These charges were

supported by verified statements. Appellant, Spencer, made no objection to such practice during the trial, although it was as apparent to him and his counsel as to any other person. At page 624 of 237 Ind. we said:

"We do not approve of the practice of permitting the jury to mingle freely with the spectators and those participating in the trial during the trial, under the conditions stated. However, it is incumbent upon the appellant to make prompt objections to such practice and to request that remedial measures be taken by the court. The appellant may not wait until the outcome of the case is known before making an objection."

It does not appear that appellant herein made any objection, during the trial, to the conduct of the jury of which he now complains, nor has he shown that he was injured or that his rights were prejudiced in any way by such alleged misconduct.

The rule applicable here is concisely stated in *Trombley* v. *State* (1906), 167 Ind. 231, at page 235, 78 N. E. 976, as follows:

"We are justified in disturbing a verdict of guilty on account of the alleged misconduct of a juror, only when it is shown that such misconduct was prejudicial to the rights of the defendant, or when such a state of facts is shown that it may fairly be presumed therefrom that the defendant's rights were prejudiced. *Drew* v. *State* (1890), 124 Ind. 9, 12; *Long* v. *State* (1884), 95 Ind. 481, 486; *Achey* v. *State* (1878), 64 Ind. 56; *Whelchell* v. *State* (1864), 23 Ind. 89, *Bersch* v. *State* (1859), 13 Ind. 434, 74 Am. Dec. 263." See also: *DeShone* v. *State* (1934), 207 Ind. 380, 385, 193 N. E. 223.

Appellant relies upon *Woods* v. *State* (1954), 233 Ind. 320, 119 N. E. 2d 558, to support his position here. In the Woods case a special bill of exceptions was filed

showing the testimony of two court bailiffs who had charge of the jury and that of counsel for the defendant-appellant, none of which was contradicted, nor did the State introduce any evidence in rebuttal. In that case police officers who were witnesses for the State, and the sheriff who had been active in attempting to solve the crime, were visiting with members of the jury in the room where they gathered during intermissions and recesses. Counsel for defendant-appellant, in open court, objected to this practice. However, the next day such visiting continued and counsel for defendant-appellant Woods then moved for a mistrial, which motion was, after hearing, overruled by the trial court.

In the present case, as above stated, appellant's witnesses and counsel also talked with members of the jury and no objection was made by appellant or his counsel to any visitation until the verdict of guilty was rendered against him. However, appellant states in his motion for a new trial that such alleged misconduct did not come to his attention until after the close of the trial.

While we held in the Woods case that the conduct of the policemen and sheriff in visiting with the jury in the room set apart for them was prima facie prejudicial to appellant, in the present case such prima facie presumption, if any, is overcome by the counter-affidavits produced by the State.

As above stated, appellant herein has failed to establish that the alleged misconduct of certain members of the jury was prejudicial to his fundamental rights, and under the state of facts as shown by the record here we cannot say that such prejudice may reasonably be presumed. *DeShone* v. *State, supra* (1934), 207 Ind. 380, 385, 193 N. E. 223.

*Third:* That the verdict of the jury is not sustained by sufficient evidence and is contrary to law.

This court cannot weigh evidence or judge the credibility of witnesses as appellant would have us do in order to reverse the judgment in this case. By his own admission in the argument section of his brief the testimony of the town marshal of Milan, if believed by the jury, was sufficient to sustain the conviction herein.

Considering the evidence most favorable to the State, as we are required to do, it shows that appellant was identified as the man wearing a red jacket and a red cap who was seen inside the filling station which had been robbed, and also as the man wearing a red jacket and a red cap who climbed from a window in the filling station immediately before he was taken into custody by the town marshal; and that when appellant was searched by the county sheriff, upon his arrival at the scene of the crime, he (appellant) admitted that certain articles found on his person belonged to Rayner and that he "got them" in the filling station. Other circumstances supporting the verdict of the jury appear from the evidence as a whole but we deem it unnecessary to relate them here. The evidence above summarized is sufficient to sustain the verdict of the jury and it is not contrary to law.

The appellant failing to sustain his burden of showing reversible error, the judgment must be affirmed.

Judgment affirmed.

NOTE.—Reported in 168 N. E. 2d 220.