## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin R. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Travis Ley,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 23, 2015<br><br>Court of Appeals Case No.<br>84A05-1405-CR-206<br><br>Appeal from the Vigo Superior Court.<br>The Honorable Michael Rader, Judge.<br>Cause No. 84D05-1205-FB-1723 |

**Barteau, Senior Judge**

## Statement of the Case

[1] Travis Ley appeals from his convictions after a jury trial contending that the trial court improperly denied his motion for discharge under Indiana Criminal

Rule 4(C) and that the trial court erred by denying his motion to correct error requesting a new trial based on juror misconduct. We affirm.

## Facts and Procedural History

[2] Somewhere between 9:00 and 9:30 p.m. on May 22, 2012, Ley, who had been visiting with his mother in Terre Haute, decided to eat dinner at Charlie's Bar. Ley, who had consumed two or three beers after 4:30 p.m. prior to going out for dinner, drank a pitcher of beer with his dinner. After finishing his dinner, Ley proceeded to drive home to rest because he was scheduled to work the next morning.

[3] After leaving the bar, Ley drove north on 17th Street, which intersects with Hulman Street. The traffic on 17th Street must stop for stop signs while the traffic on Hulman Street has no traffic signals and has the right of way. After stopping at the stop sign at the Hulman Street intersection, Ley proceeded into the intersection. Within seconds, he felt and heard two impacts into the driver's side of the vehicle he was driving. Motorcycles driven on Hulman Street by Jacob Quinn and Leyland Owens had collided with Ley's vehicle. According to Quinn, there was not enough time to brake, drop their bikes, or slide in reaction to Ley's vehicle proceeding into the intersection.

[4] Owens died from the injuries he sustained in the collision. Quinn suffered a broken left tibia and left fibula requiring eighteen screws in his lower leg, severe damage to the skin on his elbow and right knee, and required reconstructive plastic surgery on one of his hands.

[5] After the collision, Ley consented to a chemical test and was taken to Terre Haute Regional Hospital for blood and urine testing. The blood test conducted at the hospital revealed that Ley's blood alcohol content was .169 grams per deciliters. Testing by the Indiana State Department of Toxicology revealed a blood alcohol level of .13. Testing further revealed that Ley's blood contained pseudoephedrine, amphetamines, methamphetamine, and hydrocodone.

[6] After Owens was taken off life support, the initial charges filed against Ley were amended. He was charged with one count ("Court I") of Class B felony causing the death of another person when operating a motor vehicle with a schedule I or II controlled substance or its metabolite in the person's blood,[1] one count ("Count II") of Class B felony causing death when operating a motor vehicle while intoxicated,[2] one count ("Count III") of Class D felony causing serious bodily injury while intoxicated,[3] and one count ("Count IV") of Class D felony causing serious bodily injury when operating a motor vehicle with a schedule I or II controlled substance or its metabolite in the person's blood.[4]

---

[1] Ind. Code § 9-30-5-5(b)(2) (2010).

[2] Ind. Code §9-30-5-5(a)(3).

[3] Ind. Code § 9-30-5-4(a)(3) (2004).

[4] Ind. Code § 9-30-5-4(a)(2).

Ley filed a motion for discharge, which the trial court ultimately denied. Ley's motion to reconsider that decision was also denied. The matter then proceeded to trial.

At the conclusion of Ley's jury trial, the jury found him guilty as charged. At sentencing, the trial court vacated Ley's convictions on Count III and Count IV. The trial court sentenced Ley to an aggregate sentence of seventeen years with twelve years executed in the Indiana Department of Correction and five years suspended to probation. Ley now appeals. Additional facts will be set forth below as needed.

# Discussion and Decision

## I. Motion for Discharge

Ley argues that the trial court erred by denying his motion for discharge under Indiana Criminal Rule 4(C). "The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013). "It places an affirmative duty on the State to bring the defendant to trial, but at the same time is not intended to be a mechanism for providing defendants a technical means to escape prosecution." *Id.*

Our Supreme Court, recognizing conflicts in the analysis of the appropriate standard of review in challenges involving Criminal Rule 4, has clarified the appropriate appellate analysis in *Austin*. Although that appeal involved a challenge under Criminal Rule 4(B), the Supreme Court expressed the view that

the analysis should be applied in the context of challenges brought under Criminal Rule 4 (A) and 4 (C) as well. *Id.* at 1038 n.8. Therefore, adhering to that analysis, we apply a de novo standard of review to questions of law applied to undisputed facts, and a clearly erroneous standard of review to the trial court's factual findings of congestion or emergency based on disputed facts. *Id.* at 1039-40.

[11] Criminal Rule 4(C) provides as follows:

> No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar; provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as under subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time. Any defendant so held shall, on motion, be discharged.

[12] "The time period for Criminal Rule 4(C) begins on the later of the date the information is filed or the date of the defendant's arrest." *Brown v. State*, 725 N.E.2d 823, 825 (Ind. 2000). Charges were filed against Ley and his initial

hearing was held on May 23, 2012. At that time a trial date was set for October 4, 2012.

[13] Ley challenges three periods of delay the trial court attributed to him in the trial court's Criminal Rule 4(C) calculation resulting in the denial of his motion for discharge. The trial court found that the delays beginning on 1) February 6, 2013—lasting for forty-two days, 2) March 19, 2013—lasting for fifty-six days,[5] and 3) September 10, 2013—lasting for forty-two days, were attributable to Ley.

[14] On September 10, 2012, the parties appeared at a hearing and requested a new trial setting by joint motion. The new trial date was set for December 11, 2012. This time period counts toward the 4(C) calculation.[6]

---

[5] The trial court's order reflects fifty-six days. However, fourteen days were attributable to other continuances and will be discussed in the calculation. Therefore, we are treating the delay as another forty-two days.

[6] In *State ex rel. O'Donnell v. Cass Superior Court*, 468 N.E.2d 209 (Ind. 1984) the Supreme Court discussed the effect of a defendant's agreement to a State-sought continuance for purposes of Criminal Rule 4(C). In *O'Donnell*, the trial date had not yet been set when the defendant agreed to the continuance. The trial date was later set outside the time limits of the rule. The defendant objected and the trial court denied his motion to dismiss. The Supreme Court reversed the trial court and found that when the defendant had agreed to a continuance in that circumstance, i.e. before a trial date had been set, the delay "shall not be attributed to the defendant for purposes of Ind. R.Cr.P. 4(C)." 468 N.E2d at 211.

Later, in *Cook v. State*, 810 N.E.2d 1064 (Ind. 2004), the Supreme Court resolved conflicting authority and held that delays caused by a defendant prior to any trial date being set extend the deadline for bringing a defendant to trial under Criminal Rule 4(C). The Court considered the language of *O'Donnell*, and held that *O'Donnell* should be read for the proposition that "a defendant's agreement to a continuance sought by the State is not chargeable to the defendant and does not extend the time period of Crim. R. 4(C)." 810 N.E.2d at 1067 n.3.

However, in *Moreno v. State*, 336 N.E.2d 675, 684 (Ind. Ct. App. 1975), a panel of this Court followed Supreme Court cases and held that "[r]egardless of [defendant's] counsel's motives for agreeing to the continuance, this is a delay chargeable to [the defendant]." In *Henderson v. State*, 647 N.E.2d 7, 14 (Ind. Ct. App. 1995) *trans. denied*, we held that a joint motion for continuance, filed by the State and agreed to by the defendant, was chargeable to the defendant. Further, our Supreme Court, in *Sweeney v. State*, 704 N.E.2d 86, 101 (Ind. 1998), determined that a delay was not attributable to the State where the defendant and the State

[15]     On November 19, 2012, however, at a hearing where both parties were present, the trial court reset the trial date due to congestion of the trial court's calendar, as there was another speedy trial set ahead of Ley's trial and additional discovery was needed by the defense.  The new trial date was set for February 5, 2013.  "[C]ourt congestion or emergency does not count toward the Criminal Rule 4(C) period."  *Curtis v. State*, 948 N.E.2d 1143, 1151 (Ind. 2011).  Therefore, the time period between December 11, 2012, the previously scheduled trial date, and January 28, 2013, the next event starting the Criminal Rule 4(C) time period, or forty-nine days, is not chargeable against the Criminal Rule 4(C) period.

[16]     At a hearing on January 28, 2013, the parties discussed Ley's motion for sanctions based on the inability to take Quinn's taped statement.  Although Quinn failed to appear for two scheduled dates for his statement—the first because of pending criminal charges and the second because an inaccurate address was used by the State on the subpoena—the State made Quinn available for a taped statement, but Ley declined to follow through.  Prior to the hearing, Ley and the State discussed the need to continue the trial date because additional information was discovered during other taped statements.  Ley agreed to file a motion to continue the trial date without objection by the State.

---

filed a joint motion seeking a continuance of the trial indefinitely and attributing the resulting delay to the defendant.

Based on the unique facts of this particular case, we are not charging the continuances sought by joint motion to Ley.

However, Ley filed a motion for sanctions against the State and at the hearing, the continuance was characterized as a joint motion. The trial was reset for March 19, 2013.

[17] Both Ley and the State indicated that additional discovery was needed. To the extent that this request for a continuance can be characterized as a joint motion, the time is chargeable against the Criminal Rule 4 calculation. The joint motion of the September 10, 2012 hearing was treated similarly.

[18] On March 11, 2013, at a hearing before the trial court, the State addressed two issues that needed to be resolved prior to trial. Ley's expert accident reconstructionist had not yet completed his report and the State could not depose him until after the report was completed. Second, the State was missing hospital records pertaining to Ley, and a necessary witness could only be identified through those medical records. Without objection, the trial court granted the State's motion to continue the March 19, 2013 trial date and set the matter for trial on April 30, 2013.

[19] On March 15, 2013, the State moved to continue the trial date based on a scheduling conflict. The trial court reset the trial for May 7, 2013. On April 15, 2013, Ley filed a motion to continue the trial date due to a scheduling conflict and the trial was reset for May 14, 2013. Ley filed another motion to continue the trial date on May 6, 2013. The trial court set the trial date for June 4, 2013. "If a defendant seeks or acquiesces in a delay that results in a trial date beyond the one-year limit, the time limitations set by Criminal Rule 4 are extended by

the length of such delays." *See Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999). The continuances requested by Ley extended the Criminal Rule 4(C) time period by 47 days leading up to the next event triggering the Criminal Rule 4(C) calculation.

[20] On May 31, 2013, the trial court granted the State's motion to continue the trial setting in order to conduct testing for controlled substances on Ley's blood samples. Ley objected to that continuance. The trial court granted the State's motion and ultimately set the matter for trial on September 10, 2013. Criminal Rule 4(D) allows the trial court to continue the trial date if there is evidence for the State which can be obtained within 90 days. Although the trial court's order does not explicitly connect the additional period of time under Criminal Rule 4(D) with this specific motion for a continuance, the record supports that conclusion. Pursuant to Criminal Rule 4, however, the trial court released Ley from the Vigo County Jail pending his trial.

[21] On July 2, 2013, the State filed its amended information against Ley based on the blood testing results. While it is the State's responsibility to bring a defendant to trial within the time period of Criminal Rule 4(C), on August 23, 2013, it was Ley who filed a request for an initial hearing and omnibus date on the new charges or a denial of the new charges. The trial court held a hearing on the matter on August 27, 2013. The trial court reset the trial date based upon Ley's request for an initial hearing and omnibus date on the new charges citing Indiana Code section 35-36-8-1(a) (1985), which provides in pertinent part that the omnibus date for a person charged with a felony must be "no

earlier than forty-five (45) days and no later than seventy-five (75) days after the completion of the initial hearing. . . .” Although the State had filed the new charges against Ley on July 2, 2013, no initial hearing had been held on the charges. Ley did not object to the trial court's setting of the omnibus date on October 10, 2013, 45 days later, or to the new trial date of October 22, 2013 at that time.

[22] However, on August 29, 2013, Ley filed a written objection to the new trial date. The trial court ordered the State to respond to Ley's objection, and indicated that it was treating the objection as a motion for discharge under Criminal Rule 4. On September 10, 2013, Ley filed a notice with the trial court clarifying that Ley was not yet moving for discharge, but would "file a formal Motion for Discharge . . . at the appropriate time." Appellant's App. p. 193. The State filed its response on September 13, 2013.

[23] Ley filed his motion for discharge on October 16, 2013, along with a supporting memorandum. After the State filed its response, the trial court denied Ley's motion. The trial court also denied Ley's motion to reconsider. Ley's jury trial began on October 22, 2013.

[24] Ley was charged on May 23, 2012. The Criminal Rule 4(C) time period was extended by ninety days pursuant to Criminal Rule 4(D), to allow the State time to complete additional blood testing. Even though the trial court charged Ley with eighty-four days' worth of delay from joint motions to continue the trial setting, we have excluded them here. Continuances Ley sought further

extended the time period by forty-seven days. Additionally, Ley's request for an omnibus date not earlier than forty-five days after the initial hearing, which was held on August 27, 2013, extended the Criminal Rule 4(C) period by those forty-five days. Furthermore, the trial court continued the trial due to congestion of the trial court's calendar ultimately resulting in forty-nine days that did not count against the Criminal Rule 4(C) time period. Based on our calculation of the time that counts against the Criminal Rule 4(C) time period, the trial court correctly concluded that Ley was not entitled to be discharged.

## II. Juror Misconduct

[25] Ley contends that the trial court erred by denying his motion to correct error. On December 27, 2013, Ley filed a motion to correct error requesting the trial court to set aside Ley's convictions and order a new trial because of alleged juror misconduct. In denying the motion, the trial court found that the juror had engaged in extra-judicial communication in violation of the trial court's rules and admonishments, which amounted to gross misconduct because the communication pertained to the matter before the jury, but that the misconduct likely did not harm Ley.[7]

---

[7] We note that the trial court's order was issued the same day that our Supreme Court issued its opinion in *Ramirez v. State*, 7 N.E.3d 933 (Ind. 2014), which clarified the application of the presumption of prejudice in issues involving alleged juror taint from extra-judicial communication. We set forth that language from *Ramirez* and acknowledge that the trial court issued its order without the benefit of that decision.

We review a trial court's denial of a motion to correct error in a criminal case for an abuse of discretion. *Gregor v. State*, 646 N.E.2d 52, 53 (Ind. Ct. App. 1994). An abuse of discretion occurs "when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom" or its "decision . . . is without reason or is based upon impermissible reasons or considerations." *Id.*

In *Ramirez*, the Supreme Court clarified the showings necessary to be entitled to a presumption of prejudice when extra judicial contact or communications by a juror is alleged to have occurred as follows:

> An impartial jury is the cornerstone of a fair trial, guaranteed by the Sixth Amendment and Article 1, Section 13 of our Indiana Constitution. *See Turner v. State of Louisiana*, 379 U.S. 466, 472, 85 S. Ct. 546, 13 L. Ed. 2d 424 (1965); *Caruthers v. State*, 926 N.E.2d 1016, 1020 (Ind. 2010). To preserve impartiality and prevent taint, we prohibit unauthorized contacts and communications with jurors. Yet no trial is perfect, and we have long held that "[w]hile courts have a duty to ensure an impartial jury . . . jurors need not be absolutely insulated from all extraneous influences. . . ." *Id.* at 1021 (quoting *Lindsey v. State*, 260 Ind. 351, 356, 295 N.E.2d 819, 823 (1973)). We therefore entrust trial courts with the difficult responsibility of discerning when extraneous influences become irreparable taint warranting a new trial. *See id.*

> . . . .

> Defendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or

communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury. *Currin*, 497 N.E.2d at 1046. The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless. *See Myers v. State*, 240 Ind. 641, 646, 168 N.E.2d 220, 223 (1960); *Oldham v. State*, 249 Ind. 301, 305, 231 N.E.2d 791, 793 (1967). If the State does not rebut the presumption, the trial court must grant a new trial. On the other hand, if a defendant fails to make the initial two-part showing, the presumption does not apply. Instead, the trial court must apply the probable harm standard for juror misconduct, granting a new trial only if the misconduct is "gross and probably harmed" the defendant. *Henri v. Curto*, 908 N.E.2d 196, 202 (Ind. 2009) (internal quotation marks omitted). But in egregious cases where juror conduct fundamentally compromises the appearance of juror neutrality, trial courts should skip *Currin's* two-part inquiry, find irrebuttable prejudice, and immediately declare a mistrial. *May*, 716 N.E.2d at 422-23; *Kelley*, 555 N.E.2d at 142; *Woods*, 233 Ind. at 323-24, 119 N.E.2d at 560–61. At all times, trial courts have discretion to decide whether a defendant has satisfied the initial two-part showing necessary to obtain the presumption of prejudice or a finding of irrebuttable prejudice. *See May*, 716 N.E.2d at 421-22.

Trial courts should apply the presumption of prejudice analysis of *Currin* in the context of the procedures we established in *Lindsey*, 260 Ind. at 358-59, 295 N.E.2d at 823-24. *Joyner v. State*, 736 N.E.2d 232, 239 (Ind. 2000) (recognizing that the *Lindsey* procedures apply to cases of extra-judicial jury communications). Trial courts must immediately investigate suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary.

> If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually

admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of "no exposure." If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial.

*Lindsey*, 260 Ind. at 359, 295 N.E.2d at 824.

Once defendants move for mistrial, the trial courts should assess whether or not there is enough evidence to meet the two-part showing under Currin. If so, then the presumption of prejudice applies and the burden shifts to the State to prove harmless error. If not, then trial courts should determine whether a juror's misconduct was gross or probably harmed the defendant.

7 N.E.3d at 936-40.

[28] Pursuant to Indiana Jury Rule 20(b), the trial court instructed the jury in pertinent part as follows:

Jurors are not investigators and are not permitted to seek out information about the case on their own. Specifically jurors are prohibited from seeking information. By using online search engines.[sic] If the trial attracts public notice in the newspaper, radio or television, the jury should avoid accounts reported by the media concerning the case. You are expected to keep an open mind, you must not form or express any conclusion about the case and you must not talk about the case amongst yourselves until you receive further notice from the court. . . . Until your jury service is complete, you shall not use computers, laptops, cellular phones or other electronic communication devices while in attendance at trial, during discussion or during deliberations unless you are specifically authorized by the court to do so. In addition while you are not in the courtroom, you shall not use computers, laptops, cellular phones or other electronic communication devices or any other methods to: 1. [c]onduct research on your own or as a group regarding the case[;] 2.

[g]ather information about the issues in the case[;] 3. [i]nvestigate the case, conduct experiments or attempt to gain any specialized knowledge about the case[;] 4. [r]eceive assistance in deciding the case from any outside source[;] 5. [r]ead, watch or listen to anything about the case from any source[;] 6. [l]isten to discussion among or receive any information from other people about the case. And finally our, 7. [t]alk to any of the parties, their lawyers, any of the witnesses or members of the media or anyone else about the case, including posting information, text messaging, emailing, posting on the internet chat rooms or social websites. . . .

Tr. pp. 114-17. In addition, the trial court admonished the jury before each break.

[29] In support of his motion to correct error, Ley attached screen shots of text messaging between L.S., the jury foreman, and his friend, J.J., taken from J.J.'s cell phone. The relevant exchange between L.S. and J.J. was as follows:

> iMessage
>
> Thursday 11:50 AM
>
> JJ: What kind of case are u on? I know u can't talk about it . . a double homicide? Lol
>
> LS: Vehicle accident resulting in death
>
> 12:29 PM
>
> JJ: Oh Travis ley! I went to school with him
>
> 12:29 PM
>
> LS: Great
>
> 12:31 PM
>
> LS: Do you know him. . . ever been with him. . .what kind of person is he?
>
> 12:35 PM

> JJ: I know him a little. He younger. I'm friends with his sons mom. His sister was in my grade and he was a couple behind me. No I've never been with him.
>
> 12:35 PM
>
> LS: Do you know him as a bad drinker? Drug user?
>
> 12:42 PM
>
> JJ: No not at all.
>
> 12:43 PM
>
> JJ: That I know of

Appellant's App. pp. 536-39. The text messaging occurred Thursday, October 24, 2013, during Ley's trial. A detective interviewed L.S. and J.J., and both acknowledged texting each other about the trial.

[30] The trial court held a hearing on Ley's motion to correct error on March 20, 2014. During the hearing, both parties acknowledged that an extra-judicial communication occurred and that it pertained to the matter before the jury. The disagreement surrounded the degree of harm. The State argued that the information provided to L.S. actually favored the defendant because J.J. told L.S. that she did not know Ley very well and that she did not know him to be a drinker or drug user. Therefore, under the analysis in *Ramirez*, Ley established his entitlement to the rebuttable presumption of prejudice. However, the State rebutted that presumption with the argument that the information actually harmed the State's case and did not harm Ley's defense. The trial court did not abuse its discretion by denying Ley's motion to correct error based on juror misconduct.

# Conclusion

[31] In light of the foregoing, we affirm the decision of the trial court.

[32] Affirmed.

Baker, J., concurs.

Riley, J., concurring in part and dissenting in part.

# IN THE
# COURT OF APPEALS OF INDIANA

Travis Ley,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

Court of Appeals Cause No.
84A05-1405-CR-206

**Riley, Judge concurring in part and dissenting in part**

[33] While I concur with the majority's conclusion affirming the trial court's denial of Ley's motion for discharge pursuant to Indiana Criminal Rule 4(C), I respectfully dissent from its result reached in Ley's claim of juror misconduct. I applaud the majority's thoughtful discussion of our supreme court's decision in *Ramirez v. State*, 7 N.E.3d 933 (Ind. 2014), but based on the facts of this case, I reach the opposite result and would remand for a new trial.

[34] The parties do not dispute that a presumption of prejudice existed after communications between a juror and an unauthorized person occurred and that these communications squarely pertained to the matter before the jury. Accordingly, pursuant to the guidelines proponed by *Ramirez*, the State had the burden to rebut this presumption of prejudice by showing that any contact or communication was harmless. *See id*. at 939. However, *Ramirez* also instructs that "in egregious cases where juror conduct fundamentally compromises the appearance of juror neutrality," the prejudice becomes irrebuttable. *Id*. I believe this to be the case here.

[35] L.S. was elected to serve as the jury foreman during trial and had the task to lead the deliberations in the jury room after receiving all the evidence in order to reach a verdict. As is customary, the trial court cautioned the jurors

> [n]ot [to] discuss the case with anyone other than your fellow jurors during the trial. . . . Do not permit others to mention the case to you or in your presence during the trial. You should not enter into conversations with any of the attorneys or parties connected with the case or with any of the witnesses. And while it is permissible to exchange ordinary greetings, further conversation is inappropriate. Jurors are not investigators and are not permitted to seek out

information about the case on their own. Specifically jurors are prohibited from seeking information by using online search engines. . . . In addition, while you are not in the courtroom, you shall not use computers, laptops, cellular phones or other electronic communication devices or any other methods to: 1. Conduct research on your own or as a group regarding the case. 2. Gather information about the issues in the case. 3. Investigate the case, conduct experiments or attempts to gain any specialized knowledge about the case. 4. Receive assistance in deciding the case from any outside source. 5. Read, watch or listen to anything about the case from any source. 6. Listen to discussion among or receive any information from other people about the case. And finally, our 7. Talk to any of the parties, their lawyers, any of the witnesses or members of the media or anyone else about the case, including posting information, text messaging, emailing, posting on the internet chat rooms or social websites.

(Transcript pp. 116-17). This caution was repeated at least twelve times over the course of the proceedings. Nonetheless, during Ley's trial and prior to deliberations, an exchange by iMessage occurred between L.S. and his friend, J.J., in which L.S. asked J.J. whether he knew the defendant and whether he was known as a bad drinker or drug user.

[36]     Accordingly, despite the trial court's repeated warnings—including one immediately before the iMessage—the jury foreman actively sought out information about the defendant. While I might have reached a different outcome if L.S. had merely received the iMessage without entering into further conversation, this is clearly not the case here as L.S. curiously and repeatedly inquired after Ley's character in blatant violation of the trial court's instructions. The State's argument that the information transmitted during the iMessage actually harmed the State's case is irrelevant. A juror who, in the face of repeated admonishments by the trial court, still seeks out inadmissible

character evidence of the defendant, regardless of which party is disadvantaged by this evidence, lacks the appearance of neutrality and taints the trial with an appearance of unfairness. That appearance is exacerbated by the fact that the juror is the foreman who presides over the process to reach the ultimate verdict. As L.S.'s conduct "fundamentally compromised the appearance of juror neutrality," the prejudice became irrebuttable and a new trial should be granted. *See Ramirez*, 7 N.E.3d at 939.