RUSH, Justice.
Every accused has a constitutionally protected right to an impartial jury. We have long recognized that even one juror’s unauthorized contacts and communications may poison the entire jury, but we rely upon trial courts to decide whether a mistrial is the cure. Unfortunately, we have given trial courts inconsistent guidance on both how to make this determination and whether the accused must prove prejudice. Today we clarify our precedent: Defendants are entitled to a rebuttable presumption of prejudice when they can show by a preponderance of the evidence that an unauthorized, extra-judicial contact or communication with jurors occurred, and that the contact or communication pertained to the matter before the jury.
*935 In this case, though, Ernesto Ramirez failed to prove that a juror’s extraneous contact and communications related to his case. As a result, he was not entitled to a presumption of prejudice, and the trial court properly denied his motion for mistrial. We also summarily affirm Ramirez’s sentence.
Background and Procedural History
Five days into Ramirez’s trial for murder and criminal gang activity, Juror 282 wrote a note to the trial court about an incident at her home the night before: “I was out to eat and my neighbor called me and said that the neighbor below me heard gunshots upstairs and running around and told them I was a jury member in a case.” She also told the other jurors of this incident. The trial court excused Juror 282 from the jury after she said that she could not render an impartial verdict. Ramirez moved for a mistrial, arguing that Juror 282’s disclosure of the incident to the other jurors “taint[ed] the whole jury” and prevented a “fair trial.” After interviewing all the jurors outside the presence of the jury with counsel present, the trial court denied Ramirez’s motion, finding that Juror 282’s incident was coincidental and the jury could remain impartial.
The jury found Ramirez guilty of murder and criminal gang activity, but in a second phase acquitted him of a criminal gang enhancement. The trial court sentenced him to sixty-two years for murder and two years for criminal gang activity, served consecutively. Ramirez appealed, arguing that the trial court erred in refusing to grant a mistrial and that his sixty-two year murder sentence was inappropriate. We will discuss additional facts as needed.
Standard of Review
A trial court is in the best position to evaluate whether a mistrial is warranted because it can assess first-hand all relevant facts and circumstances and their impact on the jury. See Kelley v. State, 555 N.E.2d 140, 141 (Ind.1990). We therefore review denial of a motion for mistrial only for abuse of discretion. Gregory v. State, 540 N.E.2d 585, 589 (Ind.1989). However, the correct legal standard for a mistrial is a pure question of law, which we review de novo. See Hartman v. State, 988 N.E.2d 785, 788 (Ind.2013).
Discussion and Decision
Ramirez argues the trial court failed to presume prejudice from the alleged jury taint under Remmer v. United States, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), applied the wrong mistrial standard under Indiana precedent, and improperly relied upon juror testimony in refusing to grant a mistrial. The Court of Appeals’ memorandum decision correctly held that the trial court properly denied a mistrial. But in reaching that conclusion, the Court of Appeals cited three different mistrial standards and stated, “regardless of which standard is applied, Ramirez is not entitled to a new trial.” Ramirez v. State, No. 45A05-1204-CR-224, slip op. at 7, 984 N.E.2d 258 (Ind.Ct.App. February 19, 2013). We took the Court of Appeals’ approach as an indication that our precedent on suspected jury taint has been inconsistent, and we granted transfer to clarify. 987 N.E.2d 521 (Ind.2013).
Federal and Indiana precedent has narrowed the presumption of prejudice to apply in eases where defendants show more than just potential taint — but some Indiana precedent, including our own, has applied that presumption inconsistently. We now clarify its precise scope, and reiterate the proper process for trial courts to address jury taint in the courtroom. We hold that no presumption applies in Ramirez’s case, and that the trial court’s approach in addressing his allegation of jury *936 taint was correct. On all other issues, we summarily affirm the Court of Appeals. Ind. Appellate Rule 58(A)(2).
I. Historical Development of the Presumption of Prejudice in Jury Taint Cases.
An impartial jury is the cornerstone of a fair trial, guaranteed by the Sixth Amendment and Article 1, Section 13 of our Indiana Constitution. See Turner v. State of Louisiana, 379 U.S. 466, 472, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); Caruthers v. State, 926 N.E.2d 1016, 1020 (Ind.2010). To preserve impartiality and prevent taint, we prohibit unauthorized contacts and communications with jurors. Yet no trial is perfect, and we have long held that “[wjhile courts have a duty to ensure an impartial jury ... jurors need not be absolutely insulated from all extraneous influences....” Id. at 1021 (quoting Lindsey v. State, 260 Ind. 351, 356, 295 N.E.2d 819, 823 (1973)). We therefore entrust trial courts with the difficult responsibility of discerning when extraneous influences become irreparable taint warranting a new trial. See id.
Federal precedent for making that determination has narrowed over time. The United States Supreme Court once held that “[i]n a criminal case, any private communication, contact, or tampering, directly or indirectly, with a juror during a trial about the matter pending before the jury is, for obvious reasons, deemed presumptively prejudicial....” Remmer, 347 U.S. at 229, 74 S.Ct. 450. That presumption was “not conclusive, but the burden rest[ed] heavily upon the Government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant.” Id. Remmer applied this rule to find presumptive prejudice when a defendant discovered that someone had offered to bribe one of his jurors in return for a guilty verdict. Id. at 228, 74 S.Ct. 450. But since Remmer was decided in 1954, the scope of the presumption has narrowed considerably. In Smith v. Phillips, the Court held that a defendant had the burden of proving prejudice, suggesting the presumption was either extremely narrow or nonexistent. 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). The Court later clarified “[t]here may be cases where an intrusion should be presumed prejudicial,” United States v. Olano, 507 U.S. 725, 739, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), but it has never returned to Remmer’s broad presumption. The federal circuits have recognized this evolution, and most have applied a narrower presumption of prejudice than what Justice Sherman Minton articulated in Remmer.[1]
Indiana, likewise, has historically applied a presumption of prejudice narrower than Remmer’s original formulation. In Currin v. State, we said that “a rebuttable pre *937 sumption of prejudice arises from juror misconduct involving out-of-court communications with unauthorized persons” — but that “such misconduct must be based on proof, by a preponderance of the evidence, that an extra-judicial contact or communication occurred, and that it pertained to a matter pending before the jury.” 497 N.E.2d 1045, 1046 (Ind.1986). We articulated the presumption of prejudice in Currin without any reference to Remmer. Curtin's formulation was the synthesis of a long line of Indiana cases holding that defendants must make a preliminary showing that jury taint actually occurred before a judge would consider whether any taint had irreparably prejudiced the jury. See, e.g., Fox v. State, 457 N.E.2d 1088, 1093-94 (Ind.1984); Brown v. State, 245 Ind. 604, 607, 201 N.E.2d 281, 283 (1964); Barker v. State, 238 Ind. 271, 278, 150 N.E.2d 680, 684-84 (1958). Almost fifty years before Remmer was decided, Indiana courts would only entertain allegations of impermissible jury taint “when such a state of facts is shown that it may fairly be presumed therefrom that the defendant’s rights were prejudiced.” Trombley v. State, 167 Ind. 231, 78 N.E. 976, 977 (1906).
Alongside the presumption of prejudice analysis synthesized in Currin, Indiana courts have applied an irrebuttable presumption of prejudice aimed at identifying egregious “juror conduct with witnesses occurring contemporaneous to the trial proceeding.” May v. State, 716 N.E.2d 419, 422 (Ind.1999). We have referred to such conduct as “prima facie prejudicial.” We first used that phrase to describe jury taint in Woods v. State, 233 Ind. 320, 324, 119 N.E.2d 558, 561 (1954), where three state witnesses — two police officers and the sheriff — repeatedly visited jury members in a room where the jury congregated during recesses and intermissions. Id. at 323, 119 N.E.2d at 560. Likewise, in Kelley, the jury was tainted after three jurors ate lunch with the State’s sole witness, and the witness was overheard stating “I seen him do it,” and one of the jurors responded, “I could see him do that.” 555 N.E.2d at 141. And in May, we granted a new trial after a juror’s conversation with a witness ended with an invitation for the juror to come over to the witness’s house to watch a pay-per-view boxing match. 716 N.E.2d at 420.
We clarified in May that the phrase “prima facie prejudicial” used previously in Woods and Kelley referred to “extra-judicial juror conduct ... fundamentally harmful to the appearance of the fair and impartial administration of justice ... irrespective of whether the communication concerned a matter pending before the jury.” 716 N.E.2d at 422 (emphasis added). All defendants needed to establish in order to show “prima facie prejudice” was conduct that compromised the appearance of jury neutrality — such as open fraternizing between jurors and witnesses. Defendants needed to show nothing about the content of such egregious interactions, only that they took place. In essence, then, Woods, Kelley, and May carved out a very narrow set of egregious circumstances in which the prejudice under Currin is not merely presumed, but automatically found; and the State will never be able to show harmless error. See May, 716 N.E.2d at 422-23; Woods, 233 Ind. at 323-24, 119 N.E.2d at 560-61.
In sum, Indiana courts have been applying a presumption of prejudice since long-before Remmer. The presumption as synthesized in Curtin is consistent with the narrow presumption the United States Supreme Court continues to apply and is well within the range of comparable alternatives adopted by the federal circuit courts. And in rare cases, we have found the presumption of prejudice irrebuttable *938 when the very appearance of jury neutrality is compromised.
II. Confusion in Our Application of the Presumption of Prejudice.
While we have clearly established the presumption of prejudice in our case law, Indiana courts have not applied it consistently. As one panel of our Court of Appeals has observed, many Indiana cases “state the presumption of prejudice as black letter law and then proceed to ignore it.” Hall v. State, 796 N.E.2d 388, 395 (Ind.Ct.App.2003), trans. denied. Often we have cited the presumption of prejudice we discussed in Currin but applied a different mistrial standard instead. For example, some cases recited a presumption of prejudice, yet held without explanation that defendants have to meet the “probable harm” standard reserved for juror misconduct cases not involving out-of-court communications with unauthorized persons — that is, that the misconduct is “gross” and “probably harmed the defendant.” E.g., Griffin v. State, 754 N.E.2d 899, 901, 903 (Ind.2001); Stokes v. State, 908 N.E.2d 295, 300 (Ind.Ct.App.2009), trans. denied; Pagan v. State, 809 N.E.2d 915, 921 (Ind.Ct.App.2004), trans. denied, disapproved of on other grounds. Other cases have cited the presumption but held that the defendant had to show a “substantial possibility” that the jury was improperly influenced before getting a new trial. E.g., Palilonis v. State, 970 N.E.2d 713, 724 (Ind.Ct.App.2012), trans. denied; Butler v. State, 622 N.E.2d 1035,1040-11 (Ind.Ct.App.1993), trans. denied. And some cases have cited to both the presumption of prejudice and the probable harm standard for jury misconduct but have based their ultimate holdings on the “grave peril” standard in the end. See, e.g., Holden v. State, 916 N.E.2d 223, 228-29 (Ind.Ct.App.2009).
Griffin exemplifies the approach of citing the presumption but not following it. There, jurors used the opinion of the alternate juror to break a deadlock in their deliberations. Id. at 900. Griffin was convicted after the alternate told jurors that she believed Griffin was guilty. Id. at 900-01. Once the alternate juror’s input came to light, Griffin sought a new trial, id. at 900, but we upheld the jury’s verdict, id. at 903. Our analysis began by referencing Currin’s presumption of prejudice, id. at 901 (citing Currin, 497 N.E.2d at 1046) — appropriately so, because Griffin (like Currin) involved an out-of-court communication by jurors with an unauthorized person. But without explanation, we applied the probable harm standard for juror misconduct and stated, “A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant.” Id. (citing Lopez v. State, 527 N.E.2d 1119 (Ind.1988)). Subsequent courts have followed Griffin’s lead by stating that the presumption of prejudice applies but applying the probable harm standard instead. See, e.g., Stokes, 908 N.E.2d at 300; Pagan, 809 N.E.2d at 921.
Hall v. State was one of these cases that took note of our approach in Griffin and went as far as concluding the presumption of prejudice no longer existed in Indiana. 796 N.E.2d at 396. In Hall, the defendant was convicted of murder. Id. at 393. After trial, Hall filed a motion to correct error, alleging juror misconduct. Id. He claimed that a juror’s stepson was incarcerated with Hall, and the stepson initially believed Hall was innocent. Id. But over the course of the trial, the stepson and other inmates grew to believe Hall was guilty — an opinion the stepson shared with the juror’s wife. Id. The juror then overheard his wife communicate the stepson’s beliefs to another family member, and told the rest of the jury what he had over *939 heard. Id. at 393-94. The Court of Appeals discussed how Griffin and other cases departed from the presumption of prejudice described in Currin, and said that it would have preferred to give Hall that presumption. See id. 394-96 & n. 6. But it refrained from granting a new trial because “mandatory precedent clearly places the burden of proving prejudice on the defendant, [and] require[d] Hall to prove he was prejudiced by the misconduct.” Id. at 396.
The Court of Appeals’ initial instinct in Hall was correct — and but for Griffin and other precedent, it would have granted Hall the presumption of prejudice that he deserved. The Seventh Circuit acknowledged as much when Hall’s case reached that court on habeas review. The Seventh Circuit stated, “we are confident that despite some ambiguity regarding when the Remmer presumption should apply, all reasonable interpretations of Remmer and its progeny would lead to a presumption of prejudice in favor of Hall.” Hall v. Zenk, 692 F.3d 793, 805 (7th Cir.2012), cert. denied sub nom. Butts v. Hall, — U.S. -, 133 S.Ct. 1805, 185 L.Ed.2d 811 (2013). See also Wisehart v. Davis, 408 F.3d 321, 326-27 (7th Cir.2005) (noting that the Indiana Supreme Court did not apply Remmer “or any reasonable variant of it”). So today, we take this opportunity to clarify how Indiana courts should apply the presumption of prejudice that remains under Remmer and our own precedent.
III. Clarification of Our Precedent.
Defendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury. Currin, 497 N.E.2d at 1046. The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless. See Myers v. State, 240 Ind. 641, 646, 168 N.E.2d 220, 223 (1960); Oldham v. State, 249 Ind. 301, 305, 231 N.E.2d 791, 793 (1967). If the State does not rebut the presumption, the trial court must grant a new trial. On the other hand, if a defendant fails to make the initial two-part showing, the presumption does not apply. Instead, the trial court must apply the probable harm standard for juror misconduct, granting a new trial only if the misconduct is “gross and probably harmed” the defendant. Henri v. Curto, 908 N.E.2d 196, 202 (Ind.2009) (internal quotation marks omitted). But in egregious cases where juror conduct fundamentally compromises the appearance of juror neutrality, trial courts should skip Currin’s two-part inquiry, find irrebuttable prejudice, and immediately declare a mistrial. May, 716 N.E.2d at 422-23; Kelley, 555 N.E.2d at 142; Woods, 233 Ind. at 323-24, 119 N.E.2d at 560-61. At all times, trial courts have discretion to decide whether a defendant has satisfied the initial two-part showing necessary to obtain the presumption of prejudice or a finding of irrebutta-ble prejudice. See May, 716 N.E.2d at 421-22.
Trial courts should apply the presumption of prejudice analysis of Currin in the context of the procedures we established in Lindsey, 260 Ind. at 358-59, 295 N.E.2d at 823-24. Joyner v. State, 736 N.E.2d 232, 239 (Ind.2000) (recognizing that the Lindsey procedures apply to cases of extra-judicial jury communications).[2] *940 Trial courts must immediately investigate suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary.
If any of the jurors have been exposed, he must be individually interrogated by the court outside the presence of the other jurors, to determine the degree of exposure and the likely effect thereof. After each juror is so interrogated, he should be individually admonished. After all exposed jurors have been interrogated and admonished, the jury should be assembled and collectively admonished, as in the case of a finding of “no exposure.” If the imperiled party deems such action insufficient to remove the peril, he should move for a mistrial.
Lindsey, 260 Ind. at 359, 295 N.E.2d at 824. Once defendants move for mistrial, the trial courts should assess whether or not there is enough evidence to meet the two-part showing under Curtin. If so, then the presumption of prejudice applies and the burden shifts to the State to prove harmless error. If not, then trial courts should determine whether a juror’s misconduct was gross or probably harmed the defendant.
IV. Ramirez Is Not Entitled to a New Trial.
Having clarified when the presumption of prejudice applies, we hold Ramirez is not entitled to the presumption because he failed to show that Juror 282’s apartment incident was related to his case. Currin, 497 N.E.2d at 1046. Juror 282 herself was not sure if her status as a juror triggered the apartment incident. But more importantly, her own narration strongly suggests that no one even entered her apartment. Upon returning home, Juror 282 reported that it seemed as if no one had tampered with her door locks or moved anything around in her apartment. Though one juror indicated that Juror 282 said a police officer she had called advised her to try to get off the jury, no other jurors corroborated that claim, nor did Juror 282 herself mention it in her own interview with the trial court outside the presence of the jury. Juror 282’s disclosure of her experience to the rest of the jury, likewise, is not an extra-judicial communication that warrants a presumption of prejudice because most believed it was “coincidence” or “dumb luck” — and only three jurors thought it might have been something more. This evidence may have permitted the trial court to find by a preponderance that Juror 282’s experience was related to this case. But the evidence was also inconclusive enough that the court was within its discretion to reach the opposite conclusion — that Juror 282’s disclosure to her fellow jurors was nothing more than a concerned individual sharing a frightening, but unrelated, personal experience with her peers. See Caruthers, 926 N.E.2d at 1022 (“we cannot infer prejudice where none is shown and no relationship between a juror and a party existed”).
Because the trial court was within its discretion to find that Juror 282’s contacts and communications with her neighbor did not relate to the matter before the jury, Ramirez is left with a claim of simple juror misconduct. The trial court therefore should have analyzed whether Juror 282’s conduct was gross *941 misconduct and probably harmed the defendant, see Henri, 908 N.E.2d at 202, but applied the grave peril standard instead. Regardless, denying Ramirez’s motion for mistrial was proper even under the probable harm standard. It is not gross misconduct for a juror to discuss a possible apartment break-in with her neighbor. It may have been misconduct to discuss the incident with the other jurors. But even if it was, the trial court remedied any possible harm by interviewing and excusing Juror 282, and then individually interviewing all remaining jurors outside the presence of the jury with counsel present to assess their ability to remain impartial. See Lindsey, 260 Ind. at 358-59, 295 N.E.2d at 823-24. All jurors stated they could render a fair verdict, and Ramirez has given us no reason to doubt their assurances.
Ramirez argues we should ignore these assurances because Kelley prohibits trial courts from relying on jurors’ own statements of impartiality. We are not persuaded. Nowhere in Kelley did we preclude trial courts from relying on jurors’ assurances of impartiality. See also Phillips, 455 U.S. at 217 n. 7, 102 S.Ct. 940 (stating that a juror’s own testimony is not inherently suspect). Rather, we assumed that the defendant was prejudiced in Kelley because the interactions of the jurors and the witness were so intimate. 555 N.E.2d at 142. As noted above, Kelley carved out a set of egregious circumstances in which a juror’s actions are “prima facie prejudicial” — that is, the presumption of prejudice is irrebuttable. May, 716 N.E.2d at 422-23; Woods, 233 Ind. at 323-24, 119 N.E.2d at 560-61. Juror 282’s contacts and communications do not rise to this level of prejudice. The trial court in this case did not abuse its discretion in relying on the juror’s assurances of impartiality because Juror 282’s actions were not “prima facie prejudicial.”
Conclusion
In cases of suspected jury taint, a presumption of prejudice still applies in limited circumstances. Whenever defendants can prove, by a preponderance of the evidence, that a juror engages in unauthorized contacts or communications that are directly related to their case, they are entitled to a presumption of prejudice. The State then bears the burden of showing harmless error. Ramirez has failed to demonstrate that he was entitled to a presumption of prejudice because he has not shown that Juror 282’s incident related to his case or even that the other jurors believed it was. Ramirez’s case was instead one of simple juror misconduct, and he has not demonstrated that he suffered gross misconduct or probable harm. We affirm the trial court’s denial of Ramirez’s motion for a new trial, and summarily affirm the Court of Appeals’ decision to uphold his sentence.
DICKSON, C.J., and RUCKER and DAVID, JJ., concur.
MASSA, J., concurs in result with separate opinion.

. United States v. Mack, 729 F.3d 594, 606 (6th Cir.2013), cert. denied, - U.S. -, 134 S.Ct. 1338, 188 L.Ed.2d 345 (2014); United States v. Dehertogh, 696 F.3d 162, 167 (1st Cir.2012); Hall v. Zenk. 692 F.3d 793, 803-05 (7th Cir.2012). cert. denied sub nom. Butts v. Hall, - U.S. -, 133 S.Ct. 1805, 185 L.Ed.2d 811 (2013); United States v. Farhane. 634 F.3d 127, 168-69 (2d Cir.2011), cert. denied sub nom. Sabir v. United States, — U.S. -, 132 S.Ct. 833, 181 L.Ed.2d 542 (2011); United States v. Honken, 541 F.3d 1146, 1167 (8th Cir.2008); United States v. Barrett, 496 F.3d 1079, 1102 (10th Cir.2007); Brooks v. Dretke, 418 F.3d 430, 434 (5th Cir.2005); United States v. Rutherford, 371 F.3d 634, 642-44 (9th Cir.2004); United States v. Lloyd, 269 F.3d 228, 238 (3d Cir.2001); United States v. Cheek, 94 F.3d 136, 141 (4th Cir.1996); United States v. Williams-Davis, 90 F.3d 490, 496-97 (D.C.Cir.1996). The Eleventh Circuit has yet to address the scope of the presumption of prejudice under Remmer. See Boyd v. Allen, 592 F.3d 1274, 1305 n. 9 (11th Cir.2010).

. Remmer s presumption of prejudice was applied in tandem with a "notice to and hearing *940 of the defendant” to determine if juror contacts with unauthorized persons are harmless, 347 U.S. at 229, 74 S.Ct. 450 — hearings now familiarly known as Remmer hearings. See U.S. v. Martin, 692 F.3d 760, 764-65 (7th Cir.2012) (discussing “Remmer hearings”). The procedures prescribed in Lindsey are our Indiana state analogue to these hearings and operate as the procedural context in which courts should determine if the presumption of prejudice applies.