MASSA, J.,
concurring in part and dissenting in part.
As far as we can tell from the incomplete record, the Wahls are getting a new trial because the jury viewed properly admitted evidence sent with them to the jury room, improperly emphasized by an alternate’s words, gestures and facial expressions. And we grant this relief without knowing if deliberations were actually affected. We should know more before ordering this result.
I concurred in result only in Ramirez, believing that the United States Supreme Court had cogently addressed identical issues relating to juror misconduct, and that its reasoned opinions were consistent with prior Indiana precedent: for “garden-variety juror misconduct,” such as “alternate jurors being present in the jury room during deliberations,” the burden should remain with the defendant “to show that the misconduct prejudiced his trial and he is therefore entitled to a new one.” Ramirez v. State, 7 N.E.3d 933, 944 (Ind.2014) (Massa, J., concurring in result) (citing United States v. Olano, 507 U.S. 725, 730, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). A *118 majority of this' Court disagreed," instead finding that a presumption of prejudice arises — irrespective of the' actual facts on the ground — when the evidence of misconduct meets two conditions, regardless, of degree: “(1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury.” Ramirez, 7 N.E.3d at 939.
A mere two weeks after crafting this new legal standard (and long before the advance sheet of Ramirez had been published), the jury returned a guilty verdict in these cases. And just three weeks after that, one of the jurors e-mailed the trial judge to report misconduct by an alternate.[1] This Court now grants the Wahls a new trial, finding that since this alternate’s misconduct technically satisfied the Ramirez test,[2] the burden shifted to the State to present proof positive that the misconduct was harmless. (i.e., did not impact jury impartiality), which the State failed to do. And while the majority does not state it expressly, the only possible way for the State to meet that burden would be to subpoena and/or obtain affidavits from the entire jury, individually confirming that they remained impartial during deliberations despite the misconduct. See id. at 940-41 (stating that if the misconduct is discovered prior to the verdict, the “trial court[ ] must immediately investigate suspected jury taint by thoroughly interviewing jurors collectively and individually, if necessary,” and further confirming that juror testimony as to impartiality is admissible and may be credited); op. at 115-17, n. 4 (affirming these holdings in Ramirez and further clarifying that when the presumption of prejudice arises due to a juror’s affidavit, the State cannot satisfy its burden by arguing that the affidavit does not in fact demonstrate prejudice). Conversely, it stands to reason that if the burden remained with the defendant to show prejudice based on this misconduct (as is the case in federal court, see Olano, 507 U.S. at 740, 113 S.Ct. 1770 (declining to “presume prejudice” based on presence of alternate juror at deliberations)), he would have to present that same testimonial evidence as to the jurors’ lack of impartiality resulting from the misconduct.
Thus at its core, today’s decision holds that when a credible concern arises as to jury impartiality after its service is complete, the only viable remedy is to ask' the jurors themselves whether they remained impartial during deliberations. The remainder of our recent bright-line burden-shifting rule only determines whether the State or the defendant bears responsibility for issuing the relevant subpoenas. I therefore believe the Ramirez approach, when applied to this case, merely serves to obfuscate “the ultimate inquiry,” as identified in Olano: “Did the intrusion affect the jury’s deliberations and thereby its verdict?” 507 U.S. at 739, 113 S.Ct. 1770. We simply don’t know the answer to that question — and we never will, given today’s mechanistic application of Ramirez to this quite possibly harmless misconduct by the *119 alternate. It s one thmg to apply it when, for instance, a juror uses his phone to “perform[ ] an internet search on the reliability of blood tests.” See Bisard v. State, 26 N.E.3d 1060, 1069 (Ind.Ct.App.) (applying the Ramirez presumption, though finding it overcome), trans. denied, 32 N.E.3d 238 (Ind.2015). It’s quite another when an alternate turns on the DVD player and picks up other exhibits in the jury room after being told to be quiet.
Accordingly, I concur in the Court’s decision to reverse the trial court’s denial of the Wahls’ motion for a mistrial, but dissent as to the grant of a new trial. Ramirez clearly held that the trial court has a duty to investigate jury taint by interviewing jurors when that suspected taint is discovered prior to the jury’s verdict, 7 N.E.3d at 940, but said little-to-nothing with respect to the State’s burden under its two-part test. Today’s decision — in a significant clarification of the burden of proof — extends Ramirez to impose that same duty on the State in a post-conviction setting. The State should thus be given the opportunity to meet that burden before the court makes a determination on the merits. I would therefore remand for additional hearing on the Wahls’ motion, so that every juror can actually inform the court as to the impact of the alternate juror’s misconduct on their respective impartiality.

. The e-mail noted, among other things, that when rebuked for his conduct in the jury room, the alternate “let out a big sigh, rolled his eyes and shook his head.” Court’s Ex. 1.

. The majority relies predominately upon the juror's affidavit filed with a motion to correct error in reaching this conclusion (op. at 114 — 15, 116-17), but it does not address that this juror also repeatedly informed both the alternate and the other jurors that the alternate was to have no part in deliberations. In my view, this tends to mitigate the implication that the alternate had a prejudicial impact, as the jurors were well aware of their obligations despite the misconduct.