## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2017, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Lavar L. Thomas, *Appellant-Defendant,* | December 29, 2017 |
| v. | Court of Appeals Case No. 89A04-1705-CR-1104 |
| | Appeal from the Wayne Superior Court |
| State of Indiana, *Appellee-Plaintiff* | The Honorable Gregory A. Horn, Judge |
| | Trial Court Cause No. 89D02-1504-F3-18 |

**Crone, Judge.**

## Case Summary

Lavar L. Thomas was charged with several crimes that were tried to a jury. During deliberations, Juror No. 4 notified the trial court that she felt she may be threatened by Thomas's family or girlfriend. The court questioned the juror, who said that she had expressed this feeling to the other jurors. Thomas moved for a mistrial, which the court denied. The court individually questioned the other jurors and the alternate juror, all of whom affirmed under oath that Juror No. 4's comments had not affected their decision and/or decision-making. The court replaced Juror No. 4 with the alternate juror and sent the jury back for further deliberations. Thomas renewed his motion for mistrial, which the court denied. Ultimately, Thomas was found guilty of level 4 felony unlawful possession of a firearm by a serious violent felon ("SVF"), level 6 felony possession of cocaine, and level 3 felony dealing in a narcotic drug.

Thomas now appeals, contending that the trial court erred in denying his motions for mistrial, in removing Juror No. 4, and in failing to instruct the jury regarding the reasons for her removal. Finding no reversible error, we affirm.

## Facts and Procedural History

At the start of Thomas's jury trial on February 21, 2017, he was facing charges of level 4 felony unlawful possession of a firearm by an SVF (which was bifurcated as to possession and SVF status), level 4 felony dealing in cocaine, and level 3 felony dealing in a narcotic drug. The jury began deliberating at

11:31 a.m. on February 24.[1]  At 4:24 p.m., the trial court told the parties that it had received the following note from Juror No. 4:  "I [feel] that I may be threatened by the family or girlfriend about the verdict.  I know his girlfriend and family but I do not know him personally."  Tr. Vol. 2 at 165.[2]  The court decided to voir dire the juror individually, and both counsel stated that they had no objection to this procedure.  The court placed Juror No. 4 under oath and questioned her as follows:

> THE COURT:  ….  First off, what is it that you're hoping the result from your note is?  What is it you're hoping – hoping happens as a result of you writing this note?
>
> JUROR [NO. 4]:  Well, I hope everything turns out fine, but, like I said, personally --
>
> THE COURT:  I can't -- first off, please don't tell us the status of if you voted, if you've got verdicts reached, or don't let us know any of that at this point.
>
> JUROR [NO. 4]:  Correct.
>
> THE COURT:  Okay?
>
> JUROR [NO. 4]:  Correct. I hope everything comes out good. That's all I can say. I mean --
>
> THE COURT:  And by "good," you mean that nothing bad

[1] The transcript incorrectly states that deliberations began at 11:31 p.m.  Tr. Vol. 2 at 163.

[2] In his notice of appeal, Thomas did not request a transcript of the pretrial voir dire, so we do not know whether or to what extent Juror No. 4 was questioned about her familiarity with Thomas's acquaintances and family.

happens from Mr. Thomas's family toward you?

JUROR [NO. 4]: Right. Correct.

THE COURT: Are you asking the Court to do anything at this time?

JUROR [NO. 4]: No, not at this moment, no.

THE COURT: All right. Have you voiced these concerns that are in this note to your fellow jurors?

JUROR [NO. 4]: Yes, sir, I have.

THE COURT: To all of the jurors? In other words, you brought it up in front of everyone, I assume? Is that the way it was done?

JUROR [NO. 4]: Yes.

THE COURT: In your view, has your voicing of those concerns influenced the other jurors in any way as to their verdicts or proposed -- or the way they're leaning?

JUROR [NO. 4]: Yes. I mean, we come to an agreement.

THE COURT: I'm sorry?

JUROR [NO. 4]: We come to an agreement.

THE COURT: [Prosecutor], any questions?

[PROSECUTOR]: I do. Has anyone said anything to you from his family?

JUROR [NO. 4]: No.

[PROSECUTOR]: Okay. If I can have a minute. I'm not

asking whether an agreement has been reached -- well, I think she -- has she said they have come to an agreement?

THE COURT: She said an agreement, and I don't know what that means and I don't intend to ask.

[PROSECUTOR]: Right. And I don't -- I want to know when it was brought up in jury deliberations.

THE COURT: That's a fair question. When did you bring this up?

JUROR [NO. 4]: Well, I just -- actually, I just thought about it just a minute ago, so that's the reason why because they kept saying about -- we was talking about the verdict and all that, so that's how it came -- approached.

THE COURT: Well, it's 4:30.

JUROR [NO. 4]: Correct.

THE COURT: A little after 4:30. How long ago did you bring this up? Four o'clock, 3:30?

JUROR [NO. 4]: Yeah, I'll say four o'clock.

*Id*. at 168-70. The court asked if defense counsel had any questions, and he replied, "I don't think so." *Id*. at 170. The court then sent Juror No. 4 back to the jury room.

[4] Defense counsel moved for a mistrial, stating,

We don't know what the supposed agreement is. I don't know if they're -- I mean it's anyone's guess. But it sounds like there's a very big danger if she's disclosed that she shared that with other

jurors, that it tainted the remainder of the jury panel, so the normal alternative would have been if she had sent the note and not shared it, we could replace her with an alternate. That's what an alternate is for.

*Id*. at 171. The prosecutor objected to the motion for mistrial. The court took the matter under advisement and stated that it would voir dire the jurors individually to see if they had "been influenced in any manner by what" Juror No. 4 had said. *Id*. at 172. Defense counsel did not object to this procedure.

[5] The court placed each juror under oath and asked whether Juror No. 4 had shared her "feelings" (all jurors answered yes) and whether her statements had affected the juror's decision and/or decision-making (all jurors answered no). The court followed the same procedure with the alternate juror, who had been in the jury room but had not participated in the deliberations, and she gave the same answers. Defense counsel asked all but one juror whether there was any indication that Juror No. 4's statements had affected any other juror's decision; one juror stated that he could not "speak for any other juror[,]" and the rest of the jurors answered no. *Id*. at 174. The court denied defense counsel's motion for mistrial, noting that the jurors "appeared to be adamant about the fact that it had not affected them in any way" and that "they didn't believe any of the others were affected." *Id*. at 190.

[6] The court then considered Juror No. 4's fate. The prosecutor expressed her belief that Juror No. 4 had "already stated that it would affect her decision-

making process" and asked that she be replaced with the alternate. *Id.* at 190.
Defense counsel also asked for Juror No. 4 to be replaced. The court replied,

> By agreement, at least as to where -- given the Court's ruling on
> the mistrial, counsel agree that we should replace [Juror No. 4]
> with the alternate juror. And I want to make that clear on the
> record that [defense counsel] is not agreeing -- he's only agreeing
> because I've decided on the mistrial application and have denied
> that motion.[…] I want to make that clear for appellate
> purposes.

*Id.* at 191. The court summoned Juror No. 4 and told her, "[W]e have decided
to have you replaced -- in the interest of fairness have you replaced by the
alternate juror, so we are going to do that at this time." *Id.* at 192. The court
then stated that it would summon the entire jury panel and inform the alternate
that "she is now part of the Jury[,]" which it did. *Id.* The court told the jurors,

> [W]e still do not know and we should not know the state of your
> jury deliberations. We were clear not to ask that question of
> anyone. And we do not know the status of your deliberations at
> this time. So with that, we will send you back in for what we
> think are further deliberations.

*Id.* at 193. The transcript does not indicate at what time the jury renewed its
deliberations.

[7] After the jury left the courtroom, defense counsel stated,

> Judge, […] you told the Jury several times we don't want to
> know their decision-making and where they're at on the verdict,
> but almost implicitly and undeniably by the tenor and the content

of that letter from the juror that was excused, it sounds like there's been -- I'm not sure what an agreement means, but it sounds like there's been some -- it sounds like she's disclosed that they have convicted on something. So I don't know if that will change the Court's mind in my renewing a motion for mistrial.

*Id.* The trial court replied,

It does not. We brought out every one of the other jurors who each adamantly denied that it had influenced their decision-making or their decisions up to this point in time. And I was careful to ask both, decisions and decision-making, and it was clear from each one of them that it had not. And so, with that, it seems to me the appropriate thing to do is to dismiss that juror, replace her with the alternate, and then go from there.

*Id.* at 194. Defense counsel expressed concern that "they've already reached a verdict and then the alternate is coming in post-verdict." *Id.* The court replied,

Well, it wouldn't be post-verdict because I'm assuming -- well, they haven't given anything to me. They're now going to need to include the alternate juror as a part of those discussions. I'm not sure where things stand, and I don't intend to ask. That's not our – that's not for us to know at this point […].

*Id.*

[8]   At 5:25 p.m., the court announced that the jury had "reached verdicts in this case." *Id.* at 195. The jury found Thomas guilty of unlawful possession of a firearm, level 6 felony possession of cocaine (as a lesser included offense of level 4 felony dealing in cocaine), and level 3 felony dealing in a narcotic drug. Thomas then admitted that he was an SVF for purposes of the firearm charge.

The court sentenced him to fourteen and a half years executed. Thomas now appeals.

## Discussion and Decision

## Section 1 – The trial court did not abuse its discretion in denying Thomas's motions for mistrial.

Thomas first contends that the trial court erred in denying his motions for mistrial. Our supreme court has explained that

> [a] trial court is in the best position to evaluate whether a mistrial is warranted because it can assess first-hand all relevant facts and circumstances and their impact on the jury. We therefore review denial of a motion for mistrial only for abuse of discretion. However, the correct legal standard for a mistrial is a pure question of law, which we review de novo.

*Ramirez v. State*, 7 N.E.3d 933, 935 (Ind. 2014) (citations omitted).

"An impartial jury is the cornerstone of a fair trial, guaranteed by the Sixth Amendment and Article 1, Section 13 of our Indiana Constitution." *Id*. at 936. The gravamen of Thomas's mistrial argument appears to be[3] that Juror No. 4's expression of her concern about retaliation from Thomas's family or girlfriend violated his right to an impartial jury. To the extent that the State might have

---

[3] Thomas intermingles several different arguments, which has made it difficult for us to address them.

been obligated to rebut any presumption in this regard,[4] we believe that the presumption was sufficiently rebutted by the trial court's questioning of the jurors and the alternate juror, all of whom affirmed under oath that Juror No. 4's statements did not affect their decision and/or decision-making, i.e., that they remained impartial.[5] Consequently, we find no abuse of discretion in the trial court's denial of Thomas's motions for mistrial.

## Section 2 – The trial court did not abuse its discretion in removing Juror No. 4.

[11] Thomas also argues that the trial court erred in removing Juror No. 4 during deliberations. In *Riggs v. State*, our supreme court stated,

> Although a trial court has broad discretion to remove a juror before deliberations begin, removing a dissenting juror after that point implicates the defendant's right to a unanimous verdict and the defendant's right to a jury trial. Removal of a juror after deliberations have begun is ultimately a matter requiring deference to the trial court's judgment, but it raises a number of

---

[4] In *Ramirez*, the court stated that "[d]efendants seeking a mistrial for suspected jury taint are entitled to the presumption of prejudice only after making two showings, by a preponderance of the evidence: (1) extra-judicial contact or communications between jurors and unauthorized persons occurred, and (2) the contact or communications pertained to the matter before the jury." 7 N.E.3d at 939. "The burden then shifts to the State to rebut this presumption of prejudice by showing that any contact or communications were harmless." *Id*. Thomas relies on *Ramirez* in arguing that he "is entitled to the presumption that … jury taint occurred" and that "[t]he burden, therefore, shifted to the State to illustrate otherwise." Appellant's Br. at 25. In this case, however, there is no evidence that any extra-judicial contact or communications between jurors and unauthorized persons occurred; more specifically, there is no evidence that Thomas's family or girlfriend communicated a threat to Juror No. 4. Assuming for argument's sake that the *Ramirez* rubric applies here and that Thomas showed that he is entitled to a presumption of prejudice based on Juror No. 4's communications to the other jurors, we believe that the State met its burden of showing that those communications were harmless.

[5] Thomas suggests that a trial court may not rely on a juror's own statement of impartiality. *Ramirez* says otherwise. 7 N.E.3d at 941.

considerations not present before deliberations begin. As a result, it demands a carefully developed record as to the grounds for removal and also requires precautions to avoid inappropriate consequences from the removal.

.... Once deliberations begin, discharge of a juror is warranted only in the most extreme situations where it can be shown that the removal of the juror is necessary for the integrity of the process, does not prejudice the deliberations of the rest of the panel, and does not impair the parties right to a trial by jury.

809 N.E.2d 322, 327-28 (Ind. 2004) (citation omitted). Unjustified removal of a juror "is structural error, just as much as denial of the right to an impartial jury." *Id.* at 328. "[T]he trial court must establish the record to support removal of a deliberating juror, just as a record is required to establish bias of a prospective juror." *Id.* at 329.

[12] Thomas relies on *Riggs*[6] in arguing that the trial court erred in removing Juror No. 4 from the panel. Unlike the juror at issue in *Riggs*, however, there is no indication that Juror No. 4 was a dissenting juror. Thomas complains that Juror No. 4 "was not asked questions to discern her ability to participate in deliberations or her willingness to participate[,]" that "[s]he did not seek removal from the jury[,]" and that "she informed the court that she did not require its assistance at all." Appellant's Br. at 26. He argues that upon discovering "that the information [Juror No. 4] communicated to the remaining

---

[6] Thomas also relies on *Durden v. State*, 83 N.E.3d 1232 (Ind. Ct. App. 2017), which is currently pending on transfer before our supreme court.

jurors had zero impact on their deliberations, the court should have ceased inquiry and returned [her] to the jury room for further deliberation." *Id.*

[13] But Thomas's argument disregards Juror No. 4's statement that she hoped that everything would "come[] out good[,]" i.e., that "nothing bad" would happen between her and Thomas's family. Tr. Vol. 2 at 168.[7] Although Juror No. 4 stated that she did not want the trial court to do anything at that time, the court was entitled to err on the side of her personal safety and thus ensure the integrity of the process.[8] We defer to the trial court's judgment, and the record in this case establishes that Juror No. 4's removal did not prejudice the deliberations of the rest of the panel and did not impair Thomas's right to a jury trial. Accordingly, we cannot conclude that the trial court abused its discretion in removing Juror No. 4.

---

[7] Thomas's argument also disregards that his trial counsel acquiesced to Juror No. 4's removal.

[8] Thomas takes issue with the prosecutor's assertion that Juror No. 4 had stated that her concern about Thomas's family and girlfriend "would affect her decision-making process." Tr. Vol. 2 at 190. It is true that Juror No. 4 did not say this, but the record does not indicate that the trial court based its decision on the prosecutor's assertion.

## Section 3 – Thomas waived any argument regarding the trial court's failure to instruct the jury about the reasons for Juror No. 4's removal.

[14] Finally, Thomas argues that the trial court erred in failing to instruct the jury about the reasons for Juror No. 4's removal.[9] Assuming for argument's sake that this was error, Thomas failed to bring it to the trial court's attention and therefore has waived the issue on appeal. "A party may not sit idly by, permit the court to act in a claimed erroneous manner, and subsequently attempt to take advantage of the alleged error." *Bunting v. State*, 854 N.E.2d 921, 924 (Ind. Ct. App. 2006), *trans. denied*. Therefore, we affirm.

[15] Affirmed.

Robb, J., and Bradford, J., concur.

---

[9] Thomas relies on the following language from *Riggs*:

> [T]he trial court must be careful not to convey improper messages, either verbal or silent, to the other jurors, who may infer that the juror was dismissed because of his or her view of the case.… Removal *should* be accompanied by an instruction that removal in no way reflected approval or disapproval of the views expressed by the juror.

809 N.E.2d at 329 (emphasis added). Notably, *Riggs* does not say that such an instruction must be given in every case, and Juror No. 4 was not removed from the jury based on her view of the case, i.e., whether Thomas was innocent or guilty. Given the nature of Juror No. 4's communications to the other jurors, we cannot say that the trial court erred in taking the approach of "the less said, the better."