



**FILED**

Oct 23 2025, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Court of Appeals of Indiana

Jorge Juarez Lopez,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

October 23, 2025

Court of Appeals Case No.
25A-CR-1142

Appeal from the Steuben Superior Court

The Honorable William C. Fee, Judge

Trial Court Cause No.
76D01-2306-F1-794

---

**Opinion by Judge Bradford**
Judges Weissmann and DeBoer concur.

**Bradford, Judge.**

# Case Summary

[1] Jorge Juarez Lopez was convicted of two counts of Level 1 felony rape, two counts of Level 5 felony intimidation, and Class A misdemeanor counterfeit government-issued identification, after events that transpired on the night of June 28 and early morning of June 29, 2023. At trial, Lopez's victim, M.G., had an emotional outburst after testifying, which prompted Lopez to move for a mistrial. The trial court denied Lopez's request and instead admonished the jury. After Lopez was convicted, the trial court sentenced him to an aggregate term of sixty-years of incarceration. Lopez contends that the trial court abused its discretion in denying his request for a mistrial and in sentencing him. Because we disagree, we affirm.

# Facts and Procedural History

[2] When M.G. came to the United States in 2022, she shared a residence with multiple individuals, among which were her sister and Lopez. Lopez, who worked at Miller Poultry under the name "Joel Santana" possessed a fake Social Security card in order to work, and a fake identification card in the name of another person. Tr. Vol. III p. 84. Lopez had asked M.G. to be in a romantic relationship with him, but she had declined. At some point in early 2023, M.G. moved to Texas, but came back to Indiana "a short time later" to move into a trailer home in Steuben County with her sister, her sister's boyfriend, and two others, not Lopez. Tr. Vol. II p. 212.

[3] On the night of June 28, 2023, while the then-seventeen-year-old M.G. was home alone and sleeping, Lopez entered her home and knocked on her bedroom door, saying that he had come to check on her and to see how she was doing. Lopez stayed for a "few minutes" and then left. Tr. Vol. II p. 215. Later that night, Lopez entered M.G.'s bedroom again, with something "[c]overing his face[,]" holding a knife. Tr. Vol. II p. 215. When Lopez "told [M.G.] not to scream or he was going to kill" her and put the knife to her neck, M.G. recognized the voice as Lopez's. Tr. Vol. II p. 216. Lopez forced his fingers into M.G.'s vagina, "threw [her] in the bed[,]" and then forced his penis into her vagina. Tr. Vol. II p. 218. Afterwards, Lopez "told [M.G.] that he was going to come back and he was going to kill" M.G. and her sister if she told anyone what happened. Tr. Vol. II p. 220. After M.G.'s sister returned from work and learned what had happened, she took M.G. to the hospital.

[4] At the hospital, it was discovered by sexual assault nurse examiner Kathy Dirrim that M.G. had "swelling to the right upper part of her lip. She had a linear mark on her right side of her clavicle area and also on the left side of her neck she had a linear mark." Tr. Vol. III p. 33. M.G. also had three "circular bruises" on her right thigh. Tr. Vol. III p. 33. M.G. disclosed to Dirrim that Lopez had come into her bedroom, "grabbed her from behind, put his hand over her mouth and told her he would kill her if she screamed and he put a knife on her neck." Tr. Vol. III p. 32. M.G. also disclosed that she had been raped and that Lopez had "put his penis inside her vagina and he also put his finger inside her vagina." Tr. Vol. III p. 32. When police interviewed Lopez

on June 29, 2023, he initially denied going to M.G.'s house on June 28th but later admitted that he had gone to her house after work that night. When asked whether he had had sex with M.G., Lopez "said specifically I did not have sex with her." Tr. Vol. III p. 54. Laboratory testing showed that Lopez's DNA was found in the sperm fraction of the DNA collected from M.G.'s vaginal/cervical swabs, external genital swabs, internal genital swabs, anal swabs, and on her underwear.

[5] On June 30, 2023, Lopez was charged with two counts of Level 1 felony rape, two counts of Level 5 felony intimidation, Level 6 felony strangulation, and Class A misdemeanor counterfeit government-issued identification. A jury trial commenced on February 24, 2025. Lopez testified that he and M.G. had engaged in consensual sex on the night of June 28, 2023. After M.G. testified, she engaged in a "loud" and "emotional" outburst in Spanish, directed toward Lopez, and she "lunge[d] toward [Lopez]'s table and then collapsed at the rail to the front of the courtroom." Tr. Vol. III p. 10. The trial court asked the bailiff to "take the jury out please." Tr. Vol. III p. 10. The jury left the courtroom and was returned for separation instructions before a lunch break. After the court entered recess, Lopez moved for a mistrial, arguing that M.G.'s "conduct was so prejudicial and inflammatory so as to place [Lopez] in grave peril[,]" and that she had "biased the jury in her favor[.]" Tr. Vol. III p. 12. The State responded that an admonition would remedy the situation. The trial court noted that "what the jury saw was limited somewhat visually because she ended up on the floor between the desk, but obviously extremely distraught,

angry, loud. I think we can safely assume she was cursing and I don't […] know how you unsee that." Tr. Vol. III p. 14. After the State offered an admonition, the trial court agreed to give it and denied Lopez's mistrial motion.

[6] When the jury was returned to the courtroom, the trial court stated the following:

> I want to speak to you about your oath as jurors to decide this case well and truly and fairly and honestly. And I want to talk to you about the oath you took to consider only the evidence in the case. As you all know, there was an outburst by the alleged victim almost immediately after she left the witness stand, and I won't try to describe it. You saw what you saw and you heard what you heard. Some of you might speak Spanish, I don't know, but I know that it was an extreme outburst. It was not, however, evidence. You must consider only the evidence in this case, the sworn testimony on direct and cross examination of witnesses, documents, pictures that have been received as evidence. That is evidence. What you saw and heard is not evidence and it is to have no part whatsoever in your deliberations. And I can see each of your eyes fixed on me. It seems that you understand. Do you understand?

Tr. Vol. III pp. 14–15. The jurors nodded to the affirmative, and the trial court continued:

> Okay, we just show for the record, everyone is nodding their head and I hope you take this very seriously. A unique challenge has been presented to you and I am directing you to banish from your minds any consideration of what you saw just before the recess and certainly to consider it in no way when you begin your deliberations. All okay with that. Everyone's nodding. Thank you very much. We'll continue.

Tr. Vol. III p. 15. The State later orally moved to dismiss the strangulation charge, which motion the trial court granted. At the conclusion of the trial, the jury found Lopez guilty as charged on the remaining five counts.

[7] At sentencing, the trial court found Lopez's lack of known criminal history, his employment, and his lack of drug use as mitigating circumstances, but assigned them minimal weight. The trial court found as aggravating circumstances that Lopez had selected a victim "with which he had a level of trust" and that the emotional distress suffered by M.G. "went beyond the elements of the crime[.]" Tr. Vol. III p. 189. Ultimately, the trial court imposed consecutive sentences of thirty years on each of the two rape convictions, concurrent sentences of three years on each of the two intimidation convictions, and a concurrent sentence of sixty days on the counterfeit identification conviction, resulting in an aggregate sentence of sixty years of incarceration.

# Discussion and Decision

## I. Mistrial Motion

[8] Lopez contends that the trial court abused its discretion in denying his mistrial motion after M.G.'s outburst. Specifically, Lopez contends that he was "left at a distinct and perilous disadvantage in the context of the emotional persuasion directed at the jury" after M.G.'s outburst and that the outburst was "particularly perilous" to him because "the outcome of the case hinged on the credibility of the alleged victim compared to the credibility of" Lopez.

Appellant's Br. pp. 20, 21–22. For its part, the State points out that the outburst was just as likely to cast doubt on M.G.'s credibility as it was to bolster it.

[9] We review the denial of a mistrial motion for an abuse of discretion. *Ramirez v. State*, 7 N.E.3d 933, 935 (Ind. 2014). "A mistrial is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. A timely and accurate admonition is presumed to cure any error in the admission of evidence." *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002) (citation and quotations omitted).

[10] > In determining whether a mistrial was warranted, we consider whether the defendant was placed in a position of grave peril to which he should not have been subjected. The gravity of the peril is determined by the probable persuasive effect on the jury's decision. When a motion for mistrial has been denied, the defendant has the burden to demonstrate both that he was placed in a position of grave peril to which he should not have been subjected and that no other remedy can cure the perilous situation in which he was placed.

*Brooks v. State*, 934 N.E.2d 1234, 1243 (Ind. Ct. App. 2010) (citations and quotations omitted), *trans. denied*. "Moreover, a reviewing court accords great deference to the trial court's ruling on a mistrial motion." *Id.* "Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings." *Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010) (brackets and quotations omitted), *trans. denied*.

[11] Here, after M.G.'s outburst, the trial court carefully admonished the jury, explaining that M.G.'s behavior was an "an extreme outburst. It was not,

however, evidence." Tr. Vol. III p. 15. The trial court further instructed, "You must consider only the evidence in this case, the sworn testimony on direct and cross examination of witnesses, documents, pictures that have been received as evidence. That is evidence. What you saw and heard is not evidence and it is to have no part whatsoever in your deliberations." Tr. Vol. III p. 15. After the jurors nodded to the affirmative, the trial court continued, "[a] unique challenge has been presented to you and I am directing you to banish from your minds any consideration of what you saw just before the recess and certainly to consider it in no way when you begin your deliberations." Tr. Vol. III p. 15.

[12] Initially, we note that, "[j]urors are presumed to follow a trial court's instructions." *Ward v. State*, 138 N.E.3d 268, 274 (Ind. Ct. App. 2019) (citation omitted). While Lopez contends that the trial court's admonition was insufficient to remedy any prejudice which may have resulted from M.G.'s outburst, nothing in the record suggests that the jury was unable to follow the trial court's instruction to ignore the outburst and consider only the evidence in the case. The jurors all nodded affirmatively when the trial court gave the admonition, indicating that they had all understood the instruction to ignore the outburst.

[13] Case law supports a trial court's decision to admonish the jury and deny Lopez's request for a mistrial under similar circumstances. *See, e.g.*, *Underwood v. State*, 535 N.E.2d 507, 518 (Ind. 1989) (affirming the denial of a mistrial and concluding that the trial court's admonition to the jury "cured any prejudicial impact upon appellant's case" where the victim's mother "cried in the

courtroom and then left the room"); *Adkins v. State*, 524 N.E.2d 1274, 1275 (Ind. 1988) (affirming the denial of a mistrial and concluding that the admonition of the trial court was a reasonably curative measure after the victim's mother, a spectator in the courtroom, "shouted, 'Why don't you tell the truth and stop lying?'"). We conclude that Lopez has not established that the trial court's admonition was insufficient to cure any prejudice that might have resulted from M.G.'s outburst.[1]

## II. Sentencing

[14] Lopez also contends that the trial court abused its discretion in sentencing him, arguing that the sentence imposed "is a trial penalty." Appellant's Br. p. 22. Specifically, Lopez contends that "because of the broad disparity" between the sentence offered during plea bargaining and the sentence imposed after trial, "the resulting sentence is a form of trial penalty." Appellant's Br. p. 24. We disagree.

---

[1] To the extent that Lopez complains that the admonition was not given immediately after M.G.'s outburst, we conclude that any error in the timing of the trial court's admonition was invited. *See Miller v. State*, 188 N.E.3d 871, 874–75 (Ind. 2022) ("The invited-error doctrine generally precludes a party from obtaining appellate relief for his own errors, even if those errors were fundamental.") After the outburst, the trial court immediately removed the jury from the courtroom, described the outburst, and then asked, "Does either side […] wish to be heard? Do you need some time to reflect?" Tr. Vol. III p. 10. Lopez responded, "Yes, I do, your Honor[.]" Tr. Vol. III p. 10. Lopez also responded that he "understood" when the trial court explained that it would be providing the jury with a separation instruction before lunch and was "not going to address this part of it at this point in time." Tr. Vol. III p. 11. During recess, Lopez moved for a mistrial, and, after argument, the trial court denied the motion and agreed to give an admonishment. Subsequently, the jury was returned to the courtroom and admonished. As it appears that Lopez had asked for time to reflect after M.G.'s outburst and moved for a mistrial after the jury had been excused, we conclude that any error in the timing the trial court's admonition was invited. *See Miller*, 188 N.E.3d at 874–75.

[15] "Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quotation omitted).

> It is well settled that to punish a person for exercising a constitutional right is a due process violation of the most basic sort. Moreover, it is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant has chosen to stand trial rather than plead guilty. It is also clear that under appropriate circumstances, a defendant may receive a more severe sentence following his trial than he would receive had he pleaded guilty because the trial may reveal more adverse information about him than was previously known. However, a court may not impose a sentence that conflicts with a defendant's exercise of his constitutional right to a jury trial.

*Walker v. State*, 454 N.E.2d 425, 429 (Ind. Ct. App. 1983) (quotations and citations omitted).

[16] In this case, Lopez identifies nothing in the record to suggest that the trial court imposed his sentence as a penalty for exercising his right to a jury trial, and our review of the record has revealed none.[2] Furthermore, in the trial court's

---

[2] Lopez also fails to acknowledge the fact that the unaccepted plea offer, which included a thirty-year sentence, required Lopez to plead guilty to only one count of Level 1 felony rape, and that now, subsequent

sentencing statement and sentencing orders, the trial court never once referred to the fact that Lopez had rejected a guilty plea offer, much less identified that as an aggravating factor. Additionally, Lopez cites no authority for the proposition that the terms of an unaccepted plea offer can limit the trial court's sentencing discretion when a defendant is convicted following a trial, and, indeed, it is clear that the trial court is not bound by the terms of a plea agreement unless and until it accepts that agreement. *See* Ind. Code § 35-35-3-3(e).

[17] We conclude that the trial court did not abuse its discretion in sentencing Lopez.

[18] We affirm the judgment of the trial court.

Weissmann, J., and DeBoer, J., concur.

ATTORNEY FOR APPELLANT

Joel C. Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Ellen H. Meilaender

---

to the trial, Lopez has been convicted of two counts of Level 1 felony rape, two counts of Level 5 felony intimidation, and one Class A misdemeanor.

Supervising Deputy Attorney General
Indianapolis, Indiana